COURT OF APPEALS

                                       SECOND DISTRICT OF TEXAS

                                                   FORT WORTH

 

 

                                        NO.
2-09-001-CR

 

 

ENNIS LEE DENSON                                                             APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

Appellant
Ennis Lee Denson appeals his conviction for aggravated assault, contending in
two respective points that the evidence is legally and factually insufficient
to show that he used or exhibited a deadly weapon.  See Tex. Penal Code Ann. '' 22.01(a)(1),
22.02(a)(2) (Vernon Supp. 2009). We affirm.

 








Background Facts

The
State=s version of the facts      

In
August 2008, Beckie Conyers drove with her sister-in-law to Carver Avenue in
Fort Worth to see a friend, Larry Cooper, and to ask if he would pay her to
clean his house.[2]  Cooper was not home, so Conyers tried to get
back in the car when Denson approached her from the porch next to Cooper=s house.
Denson put crack rocks in Conyers=s shirt
pocket and said, A[N]ow give me your money, bitch.@  Conyers said she did not want the drugs, and
then Denson grabbed Conyers, threw a cup of water on her, and pushed her into
the street.








Raymond
Oliver, a pastor at a church on Carver Avenue, and Gerald Stiefer, who lived in
the same neighborhood as the church, had just finished mowing the church=s
lawn.  As Oliver and Stiefer drove in
Oliver=s truck,
they saw Conyers Aflying@ out of
the bushes and landing on her back in the middle of the street.[3]  Oliver stopped his truck ten to fifteen yards
away from Conyers, and they saw Denson come behind Conyers and start to kick
and stomp her. Denson continued to tell Conyers to give him her money, and as
he pulled out a foot-long butcher knife from his waist, it appeared to Oliver
and Stiefer that Denson tried to cut off Conyers=s
fingers as Conyers tried to defend herself and get Denson away from her.

Denson
grabbed Conyers by her hair and moved the knife toward her throat; Oliver and
Stiefer thought that Denson was going to cut her throat, so Oliver walked to
the front of his truck and Ahollered@ at
Denson.  Denson asked Oliver, A[Y]ou
want some[?]@ 
Oliver replied, AYes,@ and
Denson then began to approach Oliver with the knife, but someone in the
neighborhood said, AHey, that=s
pastor,@ and
Denson ran away with the knife.  Conyers,
who was heavily bleeding from a cut to her finger and was hysterical, jumped
into Oliver=s truck as he called the
police.  Conyers bled in several parts of
Oliver=s truck.[4]

Fort
Worth Police Officer J.R. Cox received a dispatch call to Carver Avenue.  When Officer Cox arrived, other officers were
speaking with witnesses and had already taken Denson into custody.  Denson had changed clothes in the fifteen to
twenty minutes between his altercation with Conyers and his arrest.  Officer Cox took Denson to jail.








Denson
spoke with Fort Worth Police Detective Darren Darracq and initially denied
taking part at all in the altercation with Conyers.  However, Denson later told Detective Darracq
that he felt that he could take advantage of Conyers by getting her money
without providing drugs.

Denson=s
version of the facts

Denson
testified to the following facts.  He
knew and disapproved of the fact that Cooper (who lived in the house next to Denson=s mother=s house)
sold drugs, and he thought that if he could Acause
some kind of conflict, [he] might could get the task force or somebody to come
through there and get this place.@  When he saw Conyers knocking on Cooper=s door,
he asked her what she was looking for, and she said that she was looking Afor a
20.@  Denson gave Conyers some cut up potatoes that
looked like crack rocks.  Conyers said, A[T]his
is not no 20,@ and she reached into the car
and pulled out a butcher knife. Denson threw water in Conyers=s face,
grabbed the knife, and pushed her into the street.  When Oliver arrived, Denson Apanicked@ and ran
away.  Officers arrested him when he
tried to come back to the scene to tell his side of the story.

Procedural
history        








A
Tarrant County grand jury indicted Denson with aggravated assault; the
indictment included a habitual offender notice that alleged that Denson had
already been convicted of two other felonies.[5]  Denson waived his right to a jury trial and
entered a plea of not guilty.  After the
parties presented evidence and closing arguments, the trial court found Denson
guilty and sentenced him to twenty-five years=
confinement.  Denson filed his notice of
this appeal.

Evidentiary Sufficiency

To
convict Denson of aggravated assault based on the allegations in the
indictment, the State was required to prove that he intentionally, knowingly,
or recklessly caused bodily injury to Conyers and that he used or exhibited a
deadly weapon while doing so.  See
Tex. Penal Code Ann. '' 22.01(a)(1),
22.02(a)(2).  In his two related points,
Denson argues that the evidence is legally and factually insufficient to prove
that he used or exhibited a deadly weapon.

                                      Standards
of Review








In
reviewing the legal sufficiency of the evidence to support a conviction, we
view all of the evidence in the light most favorable to the prosecution in
order to determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235 S.W.3d 772, 778
(Tex. Crim. App. 2007).  This standard
gives full play to the responsibility of the trier of fact to resolve conflicts
in the testimony, to weigh the evidence, and to draw reasonable inferences from
basic facts to ultimate facts.  Jackson,
443 U.S. at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778.  

The
trier of fact is the sole judge of the weight and credibility of the
evidence.  See Tex. Code Crim. Proc. Ann. art. 38.04
(Vernon 1979); Brown v. State, 270 S.W.3d 564, 568 (Tex. Crim. App.
2008), cert. denied, 129 S. Ct. 2075 (2009).  Thus, when performing a legal sufficiency
review, we may not re-evaluate the weight and credibility of the evidence and
substitute our judgment for that of the factfinder.  Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000).  Instead, we Adetermine
whether the necessary inferences are reasonable based upon the combined and
cumulative force of all the evidence when viewed in the light most favorable to
the verdict.@ 
Hooper v. State, 214 S.W.3d 9, 16B17 (Tex.
Crim. App. 2007).  We must presume that
the factfinder resolved any conflicting inferences in favor of the prosecution
and defer to that resolution. Jackson, 443 U.S. at 326, 99 S. Ct. at
2793; Clayton, 235 S.W.3d at 778.








When
reviewing the factual sufficiency of the evidence to support a conviction, we
view all the evidence in a neutral light, favoring neither party. Steadman
v. State, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009); Watson v. State,
204 S.W.3d 404, 414 (Tex. Crim. App. 2006). 
We then ask whether the evidence supporting the conviction, although
legally sufficient, is nevertheless so weak that the factfinder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
factfinder=s determination is manifestly
unjust.  Steadman, 280 S.W.3d at
246; Watson, 204 S.W.3d at 414B15,
417.  To reverse under the second ground,
we must determine, with some objective basis in the record, that the great
weight and preponderance of all the evidence, although legally sufficient,
contradicts the judgment.  Watson,
204 S.W.3d at 417.  

Unless
we conclude that it is necessary to correct manifest injustice, we must give
due deference to the factfinder=s
determinations, Aparticularly those
determinations concerning the weight and credibility of the evidence.@  Johnson v. State, 23 S.W.3d 1, 9 (Tex.
Crim. App. 2000); see Steadman, 280 S.W.3d at 246.  Evidence is always factually sufficient when
it preponderates in favor of the conviction. 
Steadman, 280 S.W.3d at 247; see Watson, 204 S.W.3d at
417.  








Applicable law and analysis

The sole
question in this case is whether the foot-long butcher knife involved in the
fight between Denson and Conyers qualifies as a deadly weapon.  The penal code=s
definition of deadly weapon includes Aanything
that in the manner of its use or intended use is capable of causing death or
serious bodily injury.@ 
Tex. Penal Code Ann. ' 1.07(a)(17)(B)
(Vernon Supp. 2009); Wingfield v. State, 282 S.W.3d 102, 107 (Tex. App.CFort
Worth 2009, pet. ref=d); Gordon v. State, 173
S.W.3d 870, 873 (Tex. App.CFort
Worth 2005, no pet.).  ASerious
bodily injury@ is an injury that Acreates
a substantial risk of death or that causes death, serious permanent
disfigurement, or protracted loss or impairment of the function of any bodily
member or organ.@ 
Tex. Penal Code Ann. ' 1.07(a)(46).  Losing the use of fingers may comprise a
serious bodily injury.  See Allen v.
State, 736 S.W.2d 225, 226B27 (Tex.
App.CCorpus
Christi 1987, pet. ref=d).  Threatening to cut someone=s throat
with a knife is evidence of the intent to inflict serious bodily injury.  See Adams v. State, No. 05‑05‑01682‑CR,
2007 WL 39001, at *3 (Tex. App.CDallas
Jan. 8, 2007, no pet.) (not designated for publication).








Although
a knife is not a deadly weapon per se, Athe
court of criminal appeals has held that an object, such as a knife, can be a
deadly weapon if the actor intends to use the object in a way in which it would
be capable of causing death or serious bodily injury.@  Wingfield, 282 S.W.3d at 107; see
McCain v. State, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000); Thomas v.
State, 821 S.W.2d 616, 618B19 (Tex.
Crim. App. 1991); Russell v. State, 804 S.W.2d 287, 290 (Tex. App.CFort
Worth 1991, no pet.).  In determining the
deadliness of the knife, the factfinder may consider the knife=s size,
shape, sharpness; the manner of its use and intended use; its capacity to
produce death or serious bodily injury; the threats or words used by the
defendant; and the proximity of the assailant. 
See Wingfield, 282 S.W.3d at 107; Russell, 804 S.W.2d at
290.








Expert
testimony is not required to show the deadliness of a knife. Russell,
804 S.W.2d at 290 (holding that testimony from an eyewitness that the defendant
held a knife having a foot-long blade at the victim=s back
was sufficient to show that it was a deadly weapon).  The presence and severity of wounds on the
victim are factors to be considered in determining whether an object was used as
a deadly weapon.  Gordon, 173
S.W.3d at 873.  But wounds are not
required before a knife can be determined as a deadly weapon, and the knife
does not have to be introduced into evidence before it is found to be a deadly
weapon.  See Brown v. State, 716 S.W.2d
939, 946 (Tex. Crim. App. 1986); Gorham v. State, 985 S.W.2d 694, 697
(Tex. App.CFort Worth 1999, pet. ref=d)
(holding that a knife that had been used in a threat and had been described but
not introduced at trial was a deadly weapon when an officer testified that it
was capable of causing death or serious bodily injury). 

In McCain,
the defendant had kicked in the door of the victim=s
kitchen and hit her several times with his fist when she saw that he had a
long, dark object in his back pocket that she believed to be a knife.  McCain, 22 S.W.3d at 499.  The defendant did not ever touch or refer to
the knife in any way.  Id.

When the defendant was arrested,
the police found a butcher knife with a nine-inch blade.  Id. 
The court of criminal appeals held that the butcher knife was a deadly
weapon because it was used to threaten deadly force, even if the defendant had
no intention of actually using deadly force. 
Id. at 503.  The court
explained, A[T]he mere carrying of a butcher
knife during such a violent attack as occurred in the present case was legally
sufficient for a factfinder to conclude that the >intended
use= for the
knife was that it be capable of causing death or serious bodily injury.@  Id.








Here,
Officer Cox testified that based upon his training and experience, a large
knife is capable of causing death or serious bodily injury, particularly when
the knife is held close to someone=s
throat.  Oliver testified that Denson
could have caused death or serious bodily injury to Conyers when he moved his
knife close to her throat.  Stiefer
testified that Denson Areached back behind [Conyers=s] head,
grabbed her by the hair of the head, straddled her and started to cut her
throat.@  Conyers testified that if Oliver had not been
present during her altercation with Denson, she is Apretty
sure [Denson] would have stabbed [her].@  The evidence shows that Denson had already
pushed Conyers into the street, kicked her, and stomped her.

The
knife was about a foot long according to Oliver, and it was obviously sharp
enough to cut skin because it cut Conyers=s hand
when, as Oliver testified, Denson tried to cut Conyers=s
fingers off, which shows his intent to cause serious bodily injury.  See Allen, 736 S.W.2d at 226B27.  The cut was deep enough that it caused
Conyers=s blood
to spill all through Oliver=s truck.
Conyers said about Denson=s attack, AI [saw]
my life flash before me.  I was scared.@  She also said that her hand was throbbing in
pain.  Viewing this evidence in the light
most favorable to the prosecution, we hold that it is legally sufficient to
show that the butcher knife was, in its use and intended use, capable of
causing death or serious bodily injury; thus, the knife qualifies as a deadly
weapon.  See Tex. Penal Code Ann. '
1.07(a)(17)(B), (46).  We overrule Denson=s first
point.








As to
factual sufficiency, although Denson testified that he did not hold the knife
toward Conyers=s throat and Conyers also did
not testify about that fact,[6]  Oliver and Stiefer did testify about Denson=s act in
that regard, and we must defer to the trial court=s
implicit resolution of conflicting evidence in a factual sufficiency
review.  See Johnson, 23 S.W.3d at
8B9.  For the same reason, we cannot overturn
Denson=s
conviction based on his other testimony and his assertion of self-defense
during his altercation with Conyers, which conflicted with the testimony of the
other three eyewitnesses.  See id.  We hold that the evidence detailed above,
viewed in a neutral light, is factually sufficient to show that the butcher
knife that Denson used was a deadly weapon, and we overrule his second
point.  See Steadman, 280 S.W.3d
at 246B47; Watson,
204 S.W.3d at 414.








Conclusion  

Having
overruled both of Denson=s points, we affirm the trial
court=s
judgment.

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL:  CAYCE, C.J.; LIVINGSTON
and MEIER, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  December 10, 2009











[1]See Tex. R. App. P. 47.4.





[2]Conyers testified that
she was aware that Cooper sells drugs but that she was not there to buy drugs.





[3]Oliver and Stiefer
testified consistently at trial.





[4]The trial court admitted
a picture of the inside of Oliver=s truck that showed Conyers=s blood on the door.





[5]Although aggravated
assault is typically a second-degree felony, the habitual offender notice allowed
the State to use the punishment range of a first-degree felony.  See Tex. Penal Code Ann. '' 12.42(b), 22.02(b)
(Vernon Supp. 2009).





[6]Conyers said in response
to a question about whether she grabbed the knife to try to keep Denson from
cutting her, AIt happened so fast, I
just don=t remember.@