

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-07-399-CR

KENT EDWARD WINGFIELD                                          APPELLANT

V.

THE STATE OF TEXAS                                                  STATE

------------

### FROM THE 30TH DISTRICT COURT OF WICHITA COUNTY

------------

## OPINION

------------

### I.  Introduction

In two issues, Appellant Kent Edward Wingfield appeals his convictions for burglary of a habitation and aggravated assault.  We affirm.

### II.  Factual and Procedural Background

On April 24, 2005, Nerelyne Pope, accompanied by Tony Russell, returned home to find that her house had been broken into.  When Pope entered

her house, she saw Wingfield, an acquaintance, coming out of a back room. Pope asked Wingfield to leave but he refused.

An argument ensued between Wingfield and Russell. Russell told Wingfield he needed to leave, and Wingfield responded by punching Russell in the mouth. When Russell threatened to call the police, Wingfield ran towards the kitchen. Scared, both Russell and Pope left the house. At some point, Wingfield began to chase after Russell with a knife he had taken from Pope's kitchen. Russell testified at trial that Wingfield said he was going to kill him just before he stabbed Russell five times.

The police apprehended Wingfield and charged him with burglary of a habitation and aggravated assault. A jury convicted Wingfield on both counts, and the judge sentenced him to ten years' confinement for the burglary charge and ninety years' confinement for the aggravated assault charge. This appeal followed.

### III.  Double Jeopardy

In his first issue, Wingfield complains that his Fifth Amendment right to be free from double jeopardy was violated when the trial court denied his request to dismiss the charge of aggravated assault and he was convicted of both aggravated assault and burglary. The essence of his argument is that (1) the evidence was legally insufficient to show that there were two assaults: one

2

inside the house (punching) and one outside the house (stabbing); (2) the evidence to support the punching assault was legally insufficient in that Russell did not directly testify that he experienced pain from Wingfield's punch; and (3) since Russell did not experience pain, there was no punching assault, so the jury could have only found that the stabbing assault occurred; and (4) double jeopardy was violated by the application of the same assault to create two offenses, resulting in multiple punishments. *See* U.S. Const. amend. V; *Brown v. Ohio*, 432 U.S. 161, 165, 97 S. Ct. 2221, 2225 (1977); *Ex parte Herron*, 790 S.W.2d 623, 624 (Tex. Crim. App. 1990) (op. on reh'g).

## A. Legal Sufficiency

### 1. Standard of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at

3

319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

### 2. Applicable Law

Burglary of a habitation occurs when a person, without effective consent of the owner, enters a habitation and commits or attempts to commit an assault. Tex. Penal Code Ann. § 30.02(a)(3) (Vernon 2003). A person commits an assault "if the person intentionally, knowingly, or recklessly causes bodily injury to another." *Id.* § 22.01(a)(1) (Vernon Supp. 2008). Bodily injury is defined as "physical pain, illness, or any impairment of physical condition."

4

*Id.* § 1.07(a)(8) (Vernon Supp. 2008). The Texas Court of Criminal Appeals has broadly interpreted the definition of bodily injury to include "even relatively minor physical contacts so long as they constitute more than mere offensive touching." *Lane v. State*, 763 S.W.2d 785, 786 (Tex. Crim. App. 1989).

A jury may infer that a victim actually felt or suffered physical pain because people of common intelligence understand pain and some of the natural causes of it. *Randolph v. State*, 152 S.W.3d 764, 774 (Tex. App.—Dallas 2004, no pet.). When considering whether evidence is sufficient to establish that a victim suffered pain, juries may use common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life, using inferences that may reasonably be drawn from evidence. *Wawrykow v. State*, 866 S.W.2d 87, 88–89 (Tex. App.—Beaumont 1993, pet. ref'd) (finding that a rational jury could have inferred that pushes to the chest caused "physical pain"); *see also Goodin v. State*, 750 S.W.2d 857, 859 (Tex. App.—Corpus Christi 1988, pet. ref'd) (stating that people of common intelligence understand what naturally causes physical pain).

The Double Jeopardy Clause of the United States Constitution provides that no person shall be subjected to twice having life or limb in jeopardy for the same offense. U.S. Const. amend. V.

### 3. Analysis

Here, both Russell and Pope testified that while they were standing inside the house, Wingfield punched Russell in the mouth. Although Russell did not affirmatively testify to any pain, the State entered into evidence a picture of Russell's mouth showing a laceration on his lower lip. Furthermore, Russell's medical records, also entered into evidence, stated that the laceration required sutures. After taking all the evidence into consideration, the jury could have reasonably inferred that Russell suffered pain as a result of Wingfield punching him in the mouth. We therefore conclude that the evidence is legally sufficient to support Wingfield's conviction for burglary of a habitation.

Because the evidence is sufficient to support a finding that an assault occurred inside the house—i.e. Wingfield punching Russell in the mouth—and because Wingfield does not challenge the assault that occurred outside the house—i.e. Wingfield stabbing Russell five times—we conclude that the two assaults support Wingfield's convictions for burglary of a habitation and aggravated assault, and that Wingfield's right to be free from double jeopardy was not violated. Accordingly, we overrule Wingfield's first issue.

### IV. Jury Instruction

In his second issue, Wingfield argues that the trial court erred by refusing to instruct the jury on the lesser included offense of assault with regard to the

6

aggravated assault charge in the indictment. He contends that the State did not prove beyond a reasonable doubt that the knife he used to wound Russell was a deadly weapon and that the jury could have interpreted that the knife was not a deadly weapon.

## A. Lesser Included Offense

### 1. Standard of Review

We use a two-step analysis to determine whether an appellant was entitled to a lesser included offense instruction. *Hall v. State*, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007); *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex. Crim. App.), *cert. denied*, 510 U.S. 919 (1993). First, the lesser offense must come within article 37.09 of the code of criminal procedure. Tex. Code Crim. Proc. Ann. art. 37.09 (Vernon 2006); *Moore v. State,* 969 S.W.2d 4, 8 (Tex. Crim. App. 1998).

"An offense is a lesser included offense if . . . it is established by proof of the same or less than all the facts required to establish the commission of the offense charged." Tex. Code Crim. Proc. Ann. art. 37.09(1); *see also Hall*, 225 S.W.3d at 536. This inquiry is a question of law. *Hall*, 225 S.W.3d at 535. It does not depend on the evidence to be produced at the trial but is performed by comparing the elements of the offense as they are alleged in the

indictment or information with the elements of the potential lesser included offense.  *Id.* at 525, 535–36.

Second, some evidence must exist in the record that would permit a jury to rationally find that if the appellant is guilty, he is guilty only of the lesser offense.  *Hall*, 225 S.W.3d at 536; *Salinas v. State*, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005); *Rousseau*, 855 S.W.2d at 672–73.  The evidence must be evaluated in the context of the entire record.  *Moore*, 969 S.W.2d at 8.  There must be some evidence from which a rational jury could acquit the appellant of the greater offense while convicting him of the lesser included offense.  *Id.*  The court may not consider whether the evidence is credible, controverted, or in conflict with other evidence.  *Id.*  Anything more than a scintilla of evidence may be sufficient to entitle a defendant to a lesser charge.  *Hall*, 225 S.W.3d at 536.

## 2. Applicable Law

Because the State concedes that assault is a lesser included offense of aggravated assault with a deadly weapon, our sole inquiry is to determine if some evidence exists that would permit a jury to rationally find Wingfield guilty only of the lesser offense of assault.  *See Rousseau*, 855 S.W.2d at 672–73.  A lesser included offense instruction was required if the record contains some

8

evidence that Wingfield did not use or exhibit a deadly weapon. *Moreno v. State*, 38 S.W.3d 774, 778 (Tex. App.—Houston [14th Dist.] 2001, no pet.).

Section 22.01 of the penal code states that a person commits assault if he "intentionally, knowingly, or recklessly causes bodily injury to another." Tex. Penal Code Ann. § 22.01(a)(1). A person commits the offense of aggravated assault if he intentionally, knowingly, or recklessly causes bodily injury to another and "uses or exhibits a deadly weapon during the commission of the assault." *Id.* § 22.02(a)(2). A deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(a)(17)(B); *Gordon v. State*, 173 S.W.3d 870, 873 (Tex. App.—Fort Worth 2005, no pet.); *Dotson v. State*, 146 S.W.3d 285, 299 (Tex. App.—Fort Worth 2004, pet. ref'd).

Although a knife is not a deadly weapon per se, the court of criminal appeals has held that an object, such as a knife, can be a deadly weapon if the actor intends to use the object in a way in which it would be capable of causing death or serious bodily injury. *McCain v. State*, 22 S.W.3d 497, 502–03 (Tex. Crim. App. 2000); *Russell v. State*, 804 S.W.2d 287, 290 (Tex. App.—Fort Worth 1991, no pet.). Serious bodily injury means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

9

Tex. Penal Code Ann. § 1.07(a)(46). Factors considered in determining whether a knife is capable of causing death or serious bodily injury include the physical proximity of the parties, the threats or words used by the defendant, the size, shape, and sharpness of the weapon, the manner in which the defendant used the weapon, and the wounds inflicted on the victim. *Brown v. State*, 716 S.W.2d 939, 946 (Tex. Crim. App. 1986); *Bailey v. State*, 46 S.W.3d 487, 491–92 (Tex. App.—Corpus Christi 2001, pet. ref'd); *Garcia v. State*, 17 S.W.3d 1, 4–5 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd).

### 3. Analysis

According to Wingfield, due to the size, shape, and intended use of the knife in this case, its "character as a deadly weapon is subject to different interpretations." And, because the knife's character is subject to different interpretations, the trial court erred when it refused to give the jury an instruction for the lesser included offense of assault. However, the record is devoid of evidence that would support Wingfield's "interpretation" theory, and he has failed to direct us to any in his brief.

The State, on the other hand, presented evidence to support the jury's finding that the knife in question is a deadly weapon. Specifically, the State elicited evidence through Russell's testimony that Wingfield stated he was going to kill him, that Wingfield chased him down, and that Wingfield stabbed

him five times. Officer Ryan Piper of the Wichita Falls Police Department, testified that, based on his experience, the four-inch bladed knife, as conceded by Wingfield, would be considered a deadly weapon if used to stab a person in the head or body. The evidence showed that Russell had been stabbed once in the head, once in the neck, and three times in the back. Furthermore, there was evidence that one of the wounds resulted in a punctured lung that required a chest tube and a stay of about four days in the hospital.

After taking all of the evidence into consideration and using the factors from *Brown* as our guide, we hold that the evidence is legally sufficient to support the jury's finding that Wingfield's knife constituted a deadly weapon. *See Brown*, 716 S.W.2d at 94. Therefore, a jury instruction on the lesser included offense was not warranted because there was no evidence presented at trial that could permit a rational jury to find that Wingfield committed only simple assault on the basis that the knife used was not a deadly weapon. *See Moore*, 969 S.W.2d at 8. Accordingly, we overrule Wingfield's second issue.

## V. Conclusion

Having overruled Wingfield's two issues, we affirm the trial court's judgment.

BOB MCCOY
JUSTICE

11

PANEL: LIVINGSTON, DAUPHINOT, and MCCOY, JJ.

DAUPHINOT, J. filed a dissenting opinion.

PUBLISH

DELIVERED: January 22, 2009



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-07-399-CR

KENT EDWARD WINGFIELD                                                    APPELLANT

V.

THE STATE OF TEXAS                                                            STATE

------------

FROM THE 30TH DISTRICT COURT OF WICHITA COUNTY

------------

## DISSENTING OPINION

------------

The first count of both the indictment and the jury charge describe burglary as entry into a habitation without the consent of the owner, Nerelyne Pope, and committing or attempting to commit assault of an unnamed person. The majority concludes that the evidence shows that Appellant assaulted Tony Russell by hitting him in the mouth after entering the house while Pope was away.

The second count of the indictment and the second count of the jury charge describe the aggravated assault of Tony Russell with a deadly weapon

in the same episode. Appellant argues that aggravated assault is a lesser included offense of burglary as alleged in the indictment and that his convictions for both burglary and aggravated assault violate double jeopardy protections. This argument comports with his complaint at trial. The majority contends that because the assault with bodily injury occurred inside the house and the assault with the knife occurred after Appellant chased Russell outside the house, they are two separate offenses, and there is, therefore, no double jeopardy violation. The record, however, reflects a single, continuing assault. The unit of prosecution in a burglary offense is the entry, not the number of persons assaulted.[1] Two convictions will lie only if the aggravated assault is not part of the assault alleged in the burglary count.

The record reflects that Appellant and Russell were arguing and fighting in the front room of the house. Appellant hit Russell in the face, and Russell said he was going to call the police. Pope testified, "He didn't make it over there in time to call the police." The prosecutor asked her what happened to prevent Russell from calling the police, and she testified, "[Appellant] ran him down and stabbed him."

---

[1] *Ex parte Cavazos,* 203 S.W.3d 333, 337 (Tex. Crim. App. 2006).

2

When asked for further explanation, Pope said that when Russell said that he was calling 911, Appellant ran into the kitchen to get a knife, and she and Appellant ran out the front door. Pope ran to her car, and Russell ran toward the next door neighbor's house across a vacant lot. Appellant ran Russell down and stabbed him with the knife that he had grabbed in Pope's kitchen.

The Texas Court of Criminal Appeals has discussed stop-action prosecution in connection with sexual offenses against children, explaining that there is nothing in the language of the various statutes demonstrating that the legislature intended harsh penalties for sexual abuse of children to suggest that it also intended to authorize "stop-action" prosecution:

> Just as a conviction for a completed offense bars prosecution for an attempt to commit the same offense, a conviction for an offense set out in § 3.03 bars conviction for conduct that, on the facts of the case, is demonstrably part of the commission of the greater offense.[2]

The record before us demonstrates that the assault of Russell began inside the house and continued outside as Russell attempted to run away from Appellant. The assault was part of the burglary offense. Had the indictment charged Appellant with burglary by entering the house and committing or attempting to commit sexual assault of Pope, the State could have sustained

---

[2] *Patterson v. State*, 152 S.W.3d 88, 92 (Tex. Crim. App. 2004); *see also* Tex. Penal Code Ann. § 3.03 (Vernon Supp. 2008).

3

its burden by showing the sexual assault was begun inside the house and completed outside, whether on the porch, or in her car, or in the yard next door.

Similarly, the assault of Russell was an inextricable part of the burglary. Just as the State could not have convicted Appellant of assaulting Russell in the back of the house and also in the front room (although the fight began in the back of the house), the State cannot separate the composite parts of the assault in order to secure a burglary conviction for the portion of the assault that occurred inside the house and a separate aggravated assault conviction for the final portion of the assault that was completed outside.

Because such stop-action prosecution permits multiple punishments for both the greater offense of burglary and the lesser included offense of assault, I would sustain Appellant's double jeopardy complaint.

When a defendant is convicted of two offenses that are the "same" for double-jeopardy purposes, case law tells us that the conviction for the "most serious" offense is retained, and the other conviction is set aside.[3] "[T]he 'most serious' offenses is the offense . . . for which the greatest sentence was"

---

[3] *Cavazos*, 203 S.W.3d at 337.

4

imposed.[4]  The trial court sentenced Appellant to ten years' confinement for the burglary of a habitation conviction and ninety years' confinement for the aggravated assault with a deadly weapon conviction.  I would therefore retain the aggravated assault conviction with the deadly weapon finding and set aside the burglary conviction.  Because the majority upholds both convictions, violating double jeopardy protections, I must respectfully dissent.

LEE ANN DAUPHINOT
JUSTICE

PUBLISH

DELIVERED: January 22, 2009

---

[4] *Id.*