ACCEPTED
06-16-00065-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
10/14/2016 10:33:24 AM
DEBBIE AUTREY
CLERK

No. 06-16-00065-CR

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
10/14/2016 10:33:24 AM
DEBBIE AUTREY
Clerk

## IN THE COURT OF APPEALS FOR THE SIXTH JUDICIAL DISTRICT OF TEXAS

---

Cedric Charles Lister, Appellant

v.

State of Texas, Appellee

---

## Brief of Appellant
## Cedric Charles Lister

On appeal from judgment
in cause number 27141
In the 278th District Court for
Walker County, Texas
Hon. Hal Ridley Presiding

Clint F. Sare
Texas Bar No. 788354
P.O. Box 1694
Bryan, Texas 77806
(979) 822-1505
cfs@sarelaw.com
Counsel for appellant

## IDENTITY OF PARTIES AND COUNSEL

Appellant:                  Cedric Charles Lister

      Trial Counsel:        Ron Voyles
101 W Phillips St E.
Conroe, TX 77301

Austin Black
215 Simonton St.
Conroe, TX 77301

John Williford
1202 Sam Houston Ave. Ste. 1
Huntsville, TX 77340

Appellate Counsel:Clint F. Sare
P.O. Box 1694
Bryan, TX  77806

Appellee:                 State of Texas

      Counsel:           David Weeks
Christopher Thompson
Todd Lehn
1036 11th Street
Huntsville, TX  77340

# TABLE OF CONTENTS

Identity of Parties and Counsel ................................................................................ ii

Table of Contents ................................................................................................... iii

Index of Authorities ............................................................................................... iv

Statement of the Case............................................................................................. 1

Issues Presented ..................................................................................................... 1

Statement of Facts .................................................................................................. 1

Argument ................................................................................................................ 9

  Issue 1:  Was the evidence legally sufficient to support the jury's finding of

  aggravated assault based on use of a deadly weapon?........................................ 9

Potential Issues...................................................................................................... 13

  Potential Issue 2:  Was Appellant's punishment properly enhanced where the

  State failed to amend the indictment before or during trial? ............................ 14

Prayer for Relief.................................................................................................... 17

Certificate of Compliance ..................................................................................... 17

with Brief limitations and Service ........................................................................ 17

# INDEX OF AUTHORITIES

**Cases**

*Anders v. California*, 386 U.S. 738 (1967) ........................................................... 13

*Brooks v. State*, 957 S.W.2d 30 (Tex.Crim.App. 1997) ....................................... 15

*Gerloff v. State*, No. 01-94-00658-CR, 1995 WL 515130 (Tex.App.—Houston [1st Dist.] Aug. 31, 1995, no pet.) ........................................................... 13

*Gollihar v. State*, 46 S.W.3d 243 (Tex.Crim.App. 2001) ..................................... 10

*Ibarra v. State*, 177 S.W.3d 282 (Tex.App.—Houston [1st Dist.] 2005, no pet.) . 13

*Jackson v. Virginia*, 443 U.S. 307 (1979) ............................................................. 10

*Johnson v. State*, 364 S.W.3d 292 (Tex.Crim.App. 2012) ..................................... 9

*McCain v. State*, 22 S.W.3d 497 (Tex.Crim.App. 2000) ....................................... 10

*Villescas v. State*, 189 S.W.3d 290 (Tex.Crim.App. 2006) ................................... 16

*Wingfield v. State*, 282 S.W.3d 102 (Tex.App.—Fort Worth 2009, pet. ref'd) ..... 10

*Wright v. State*, No. PD-1137-15 (Tex.Crim.App. Oct. 5, 2016). ......................... 16

**Statutes**

Tex. Pen. Code § 1.07(a)(17) .......................................................................... 10, 12

Tex. Pen. Code § 12.33 ........................................................................................ 14

Tex. Pen. Code § 12.42(d) ................................................................................ 6, 14

Tex. Pen. Code § 22.02(a) ............................................................................ 3, 9, 14

## STATEMENT OF THE CASE

A jury found Appellant guilty of the felony offense of aggravated assault based on a finding that he used a deadly weapon, specifically a knife, during an altercation where the complainant was stabbed. Punishment was tried to the bench which found two prior sequential felony convictions true. It assessed punishment as a habitual offender at 40 years confinement.

## ISSUES PRESENTED

Issue: Was the evidence legally sufficient to support the jury's finding of aggravated assault based on use of a deadly weapon?

Potential Issue: Was appellant's punishment properly enhanced where the State failed to amend the indictment before or during trial?

## STATEMENT OF FACTS

Stanley Garmon, a life-long resident of Huntsville, Texas, often drank and played dominoes with friends. (2 RR 84). One of those friends was a woman named Jackie who lived at an apartment on Lake Road. He went to Jackie's November 9, 2014, and played dominoes most of the day. (Id). There were conflicting versions of the number of people present. While Stanley would later say there were "quite a few" people playing that day (2 RR 85),

according to Jackie it was her, her daughter, sister, Stanley and, in the evening, her neighbor Cedric Lister.  (2 RR 123).

Jackie said Cedric came over to use the stove but soon started playing dominoes also. (*Id*.).  They also started gambling on the games.  As Stanley later explained at trial there were two methods of betting on the games.  In a straight "head to head" bet, the loser paid the winner $30 per game.  (2 RR 86).  The other method was called a "Peter roll" where the loser paid the winner double.  It required the winner to have double the loser's points but only if the loser had fewer points than a threshold.  (2 RR 87).

It was undisputed that Stanley lost a game to Cedric.  Stanley said he went home to get money to pay the bet (2 RR 88) while Jackie testified the money was already on the table.  (2 RR 125).  In either event, Cedric got $30 from the game.  The versions differed again on what followed.  According to Jackie, Cedric demanded another $30 then and they argued about it before calming down.  (2 RR 125-26).  She agreed they went outside.  Stanley's version was that Cedric did not talk about what he was owed until they went outside.  After some small talk outside the apartment Cedric asked if Stanley was going to pay him the extra $30.  (2 RR 90).  Stanley said that wasn't the bet and turned to go back in the apartment.  (2 RR 93-94).  He alleged Cedric blocked him.  (Id.).  He said Cedric grabbed his shirt then hit him with an

object. When he pulled back he saw blood. (2 RR 94). He saw he had been stabbed in the arm. (2 RR 95). He never saw the object. (2 RR 100). It was undisputed that Stanley was taken to the local hospital where he was treated and recovered, leaving a scar on his arm. (2 RR 102).

The February 2015 indictment against Appellant alleged that he "intentionally, knowingly, or recklessly caused bodily injury to Stanley Garmon by stabbing [him] in the arm with a knife," and that the knife was a deadly weapon. (CR 5). By alleging the use of a deadly weapon, the indictment charged Appellant with the offense of Aggravated Assault under section 22.02(a)(2) of the Penal Code, a second degree felony. The indictment did not contain any enhancement allegations. Counsel was appointed for Appellant 24 days later. (CR 7). Shortly before trial the State moved to amend the indictment to add two enhancement allegations that Appellant had previously been convicted of the felony offenses of murder and unlawful possession of a firearm by a felon. (CR 23). The court did not rule on that motion and the indictment was not physically amended. (CR 5).

The case was called for trial on September 9, 2015. (2 RR 1). Before jury selection defense counsel had Appellant testify that he had received, and rejected, plea offers from the State. (2 RR 5). A jury was selected without disputed challenges for cause.

The State presented its case through Stanley Garmon, Jacqueline Hill, Brandon Boyd, Kevin Hammond and Joseph D'Addisio. As noted Jacqueline was the host of the dominoes game the previous November. (2 RR 123). She testified that when Appellant came to her apartment about 8 p.m. the other people present were her daughter, Stanley and her sister. (*Id*.) They had been playing all day. (2 RR 124). She denied there was a lot of drinking that evening. She stopped playing and was keeping score before any gambling. (2 RR 125). She said they were playing head to head rather than in teams. In her version there was sixty dollars on the table when Stanley lost the game to Cedric. (*Id*.). She then went on to testify: "actually he was what they called peter rolled in the game, and Cedric made the statement to Stanley and told him that he owed him thirty more dollars." (2 RR 125). She denied understanding that rule and did not express any opinion about what was owed. (*Id*). She was clear that they "were going at it" before Cedric asked Stanley to talk to him outside. Her testimony also differed from Stanley's in that when she went outside after the "commotion" she said Cedric's wife[1] was there. (2 RR 127). No one else identified her as being present.

---

[1] During the punishment phase of trial Veronica Ordaz testified she had been living with Appellant for five years but they were not married. (4 RR 37).

4

At trial the State called two police officers. Patrol officer Brandon Boyd responded to the apartment and interviewed Stanley in the hospital. He described Stanley as "pretty high" (2 RR 146) and extremely intoxicated. (2 RR 153). Officer Boyd saw the wound on Stanley and simply described it as "stab wound." (2 RR 150). He reported that Stanley had told him the object was a knife and the wound he saw was "consistent with" a knife wound. (*Id*.). Detective Kevin Hammond knew Stanley well and admitted that Stanley had been drinking but was "coherent." (2 RR 160). Although Jacqueline had said her sister and daughter were present in the apartment (2 RR 123) and Cedric's girlfriend was outside (2 RR 127), Hammond testified there were no other witnesses. (2 RR 161).

The State's final witness was the emergency room doctor, Joseph D'Addisio, who was responsible for, but did not actually provide, treatment to Stanley. Stanley was actually treated by an assistant. (3 RR 11). Even though he did not examine the wound or even see Stanley, D'Addisio was allowed to give testimony, including opinion testimony, based on the medical records and photographs. D'Addisio's testimony was that the wound was caused by a "sharp object." (3 RR 13-14). The State sought to rely on a statement in the records that the object was a knife, but D'Addisio admitted that was based on the statement of Stanley, and such statements can be

5

inaccurate. (3 RR 18). He did testify that the wound was "consistent with" a knife and that there was a high probability it was a knife. (3 RR 22).

The trial court denied Appellant's motion for directed verdict based on insufficient evidence the object was a knife as alleged in the indictment. (3 RR 25-26). Appellant did not testify or present any other witnesses during the guilt/innocence phase of trial. The trial court granted Appellant's request that the application paragraph track the indictment and require the jury to find not only that a that deadly weapon was used, but that it was a knife. (3 RR 28). The only objection to the jury charge denied by the court concerned the order of choices on the verdict form. Appellant did not request an instruction on the lesser-included offense of assault. The jury returned a verdict of guilt. (CR 46).

Following the verdict Appellant's counsel was permitted to withdraw and new counsel was appointed for the punishment phase of trial. (CR 48, 54). The State gave new counsel notice of its intent to enhance punishment with two prior felony convictions under section 12.42(d) of the Penal Code. (CR 55). Four months later the issue of punishment was tried to the bench. (4 RR 3).

The State presented three witnesses. Sheila Hugo worked at the Walker County Probation Department. Through her the State admitted a pre-sentence

investigation report which was prepared, but not signed by, an employee who had left the department. (4 RR 5-6; St. Ex. 2). Over a hearsay objection she was allowed to testify that Appellant had seven prior felony convictions. (4 RR 7). She did not identify any specific convictions.

The State presented Dusty Dowgar as an expert witness on fingerprint identification. He took a set of prints from Appellant before the hearing. (4 RR 10). He then testified that those prints matched the prints on records from the Texas Department of Criminal Justice for the two convictions the State has alleged for purposes of enhancement. (4 RR 14). The testimony and records were admitted without objection. (4 RR 15; St. Ex. 4).

The State's final witness was Stanley Garmon. The prosecutor's questions continued to be predicated on the assumption that the object used to cut Stanley was a knife. Stanley simply said that "it stung" when the wound occurred and that his arm was still "sore." (4 RR 18). The bulk of his testimony consisted of cross-examination on his prior relationship with Appellant and the details of the events surrounding the game and dispute. (4 RR 25- 30). He admitted to knowing Appellant and was surprised when Appellant attacked him. (4 RR 19, 20).

Appellant did not testify but called his long-time girlfriend, Veronica Ordaz. (4 RR 36). They had lived together at the same complex as Jackie for

7

five years. (4 RR 37). She described the good relationship between Appellant and her children, he helped support her and her adult children, and the financial difficulty she has had in his absence. (4 RR 37-38, 44). He had held the same job for seven years before his arrest and got along well with others. (4 RR 39, 41). The prosecutor continued his effort to fill-in the absence of evidence that a knife had been used by beginning his cross-examination of Veronica by asking "where is the knife." (4 RR 47). He went on to misstate the evidence by representing to her "it was testified" at trial "that [Appellant] had a knife." [2] (4 RR 47).

Veronica's son Denzel also testified about Appellant's positive involvement in the lives of him and his siblings. (4 RR 60-62). He was aware of Appellant having been to prison but said that was in the past and Appellant was a changed person and a good role model. (4 RR 65-66).

The trial court found the enhancement allegations true and assessed punishment at 40 years confinement but no fine. (4 RR 72-73). It signed a written judgment in conformity with that rendition, adding court costs of $269.00. (CR 62). Although Appellant's counsel did not file a motion to

---

[2] Having the benefit of the record, it is clear that the representation was false. Stanley admitted he never saw Appellant with a knife and simply thought he was stabbed with a pocket knife. (2 RR 100, 112-13) He told the physician's assistant that. (3 RR 14). The only other eyewitness to testify, Jackie, also did not see Appellant with a knife. (2 RR 130). No other witness testified to seeing or finding a knife.

withdraw, Appellant filed a pro se motion for new trial which did not make any factual allegations (CR 68), and a notice of appeal. (CR 70). Appellant's counsel also filed a motion for new trial challenging the sufficiency of the evidence of the assault offense and the deadly weapon finding. (CR 73).

## ARGUMENT

### Issue 1: Was the evidence legally sufficient to support the jury's finding of aggravated assault based on use of a deadly weapon?

The State alleged that Appellant committed the offense of aggravated assault as defined in section 22.02(a) of the Penal Code. The statute provides the offense of aggravated assault may be committed in two ways, by committing assault and causing serious bodily injury, or by committing assault and using or exhibiting a deadly weapon. Here the State alleged the use of a deadly weapon as the only the manner in which the offense was committed. It went on to specifically identify the deadly weapon as a knife.

When a statute provides alternate methods in which an offense may be committed and the State pleads one method, it is obligated to prove that method or the evidence is insufficient. *Johnson v. State*, 364 S.W.3d 292, 293-94 (Tex.Crim. App. 2012) *cert. denied*, 133 S. Ct. 536, 184 L. Ed. 2d 351

9

(U.S. 2012). Because use of a deadly weapon was an essential element of the offense charged and the State's identification of the weapon as a knife was descriptive of that element, it was not surplusage which may be disregarded. *Gollihar v. State*, 46 S.W.3d 243, 250 (Tex.Crim.App. 2001).

A knife is not a deadly weapon *per se*, *McCain v. State*, 22 S.W.3d 497, 502–03 (Tex.Crim.App. 2000); *Wingfield v. State*, 282 S.W.3d 102, 107 (Tex. App.—Fort Worth 2009, pet. ref'd). Consequently, the State was also obligated to prove the knife was a deadly weapon, that is, that in the manner of its use was capable of causing death or serious bodily injury. Tex. Pen. Code § 1.07(a)(17). The court's charge properly required the jury to find that Appellant used a deadly weapon, specifically a knife. (CR 45). The State had to prove those facts by the well-established standards established in *Jackson v. Virginia*, that, considering all of the evidence in the light most favorable to the verdict, whether a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. 443 U.S. 307, 318-19 (1979).

There was no direct evidence that Appellant used or exhibited a knife. Stanley never saw a knife. (2 RR 100). No other witness testified to seeing a knife. Police never found a knife. Here the State's evidence that Appellant used a knife rested on statements made by Stanley Garmon to others on the

date of the offense. However, when he testified under oath, Garmon admitted that he did not see a knife or any object but simply thought it was a pocket knife because "it had to have been something sharp." (2 RR 100).

At trial the State attempted to convert the speculation of Stanley into evidence that the object was a knife by simply having others repeat that Stanley said he was stabbed with a knife. They included Officer Boyd (2 RR 150, 155), and the physician's assistant who recorded Stanley's statement he was stabbed with a "pocket knife" as the "history" of the injury. (3 RR 11). That effort was unsuccessful. When the prosecutor attempted to solicit an opinion from Officer Boyd on "what caused" the wound, Boyd did not state the object was a knife. He simply testified it was a "very sharp object." (2 RR 150). He admitted Stanley was the source of the statement concerning use of a knife and simply agreed that the wound was "consistent with" a pocket knife. (2 RR 150).

With regard to the medical records Dr. D'Addisio admitted that statements by patients can be inaccurate. (3 RR 18). The State attempted to get the doctor, who had never seen the wound in person (3 RR 16), to testify that it was caused by a knife. Like Boyd and Stanley, he only testified it was consistent with a knife and was caused by a knife or something very sharp. (3 RR 14-15). The testimony of Stanley, Officer Boyd and the Doctor were

11

consistent: that the object was sharp and "consistent with" a knife but none would testify a knife was used. The evidence that the wound was "consistent with" a knife or was likely a knife fails to rise to the level to permit a factfinder to rationally find, beyond a reasonable doubt, that Appellant used a knife and is legally insufficient.

Even if the evidence had been sufficient to support a finding that Appellant used a knife, the State was also required to establish beyond a reasonable doubt that the knife was a deadly weapon, that is, that "in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Pen. Code § 1.07(a)(17). The State sought to present that evidence through doctor D'Addisio. He was asked whether the object that cause the injury "would have been capable of causing serious bodily injury or death." His response was: "in the right location, yes." (3 RR 15). That testimony was in the context of his description of the injury caused by the manner in which the object was actually used there. While the wound went through the skin and into the muscle, examination showed that "everything was working, the muscles were working, the nerves were working, everything was doing what is was supposed to do." (Id.). This testimony shows that the object would have to be used in another manner, that is a different location on the body, to cause serious bodily injury or death. Even the victim only

12

described the wound by saying it "stung" at the time and was sore after that. (4 RR 18). The evidence does not support a finding, beyond a reasonable doubt that the manner in which it was actually used rendered the object a deadly weapon.

The evidence is legally insufficient to support the jury's finding on the elements of the offense, as alleged by the State and in accordance with the jury's charged. Appellant's conviction should be reversed.

## POTENTIAL ISSUES.

Counsel for Appellant has reviewed the record for additional issues which could support the appeal and has found none. At least one court of appeals has addressed hybrid briefs presenting meritorious arguments and a discussion of additional issues appointed counsel found frivolous. In *Ibarra v. State*, 177 S.W.3d 282, 284 (Tex.App.—Houston [1st Dist.] 2005, no pet.), counsel filed a motion to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), and a brief presenting a meritorious issue. The court agreed the issue had merit and denied the motion to withdraw. *Id*. at 284. *See also*, *Gerloff v. State*, No. 01-94-00658-CR, 1995 WL 515130 (Tex.App.— Houston [1st Dist.] Aug. 31, 1995, no pet.)(memorandum op). It did not hold

a motion to withdraw is required where a meritorious issue is presented. Below is one of the potential issues examined with a discussion of why it would not be meritorious.

***Potential Issue: Was Appellant's punishment properly enhanced where the State failed to amend the indictment before or during trial?***

Appellant was charged with the offense of aggravated assault as defined by section 22.02(a)(2) of the Penal Code. That offense is a second degree felony with a range of punishment between 2 and 20 years and a fine of up to $10,000. Tex. Pen. Code §§ 12.33, 22.02(b)(1).

In May 2015 the State gave notice of intent to seek punishment enhancement based on two sequential prior convictions. (CR 13). Pursuant to section 12.42(d) of the Penal Code that would increase the punishment range to a minimum of 25 years up to 99 years. The State filed a motion to amend the indictment on August 29, 2015. (CR 23). The State did not, however, get a ruling on that motion. (4 RR 4). The face of the indictment was never modified. (CR 5).

Following the jury verdict on guilt and the appointment of new counsel to represent Appellant at the punishment phase of trial, the State again gave notice of its intent to seek enhancement. (CR 55). At the punishment hearing

14

the State acknowledged its motion to amend the indictment had not been granted. (4 RR 4). Even then it did not seek a ruling on its motion.

During the hearing the State's evidence of the prior convictions was the testimony of a fingerprint examiner that Appellant's prints matched those of records of the Texas Department of Criminal Justice containing judgments from the two prior convictions alleged by the State. (4 RR 14). The records were offered as certified public records and were admitted without objection. (St. Ex. 4; 4 RR 15).

The Court of Criminal Appeals has held that enhancement allegations must be pled in writing but it is not necessary that they appear in the indictment. *Brooks v. State*, 957 S.W.2d 30 (Tex.Crim.App. 1997). In *Brooks* it held that indictment allegations are not the only reasonable method to give notice of enhancement. *Id*. at 33. There the State had also filed a motion to amend the indictment. That motion was granted but the indictment was never amended. The court held the defendant had sufficient notice of the allegations to permit enhancement of his sentence. Id. at 34.

The Court of Criminal Appeals has consistently held that formal pleading is not required, only that defendants are entitled to "a description of the judgment of former conviction that will enable him to find the record and

15

make preparation for a trial on the question of whether he is the named convict therein." *Villescas v. State*, 189 S.W.3d 290, 293 (Tex.Crim.App. 2006).

The Court considered a similar issue recently in *Wright v. State*, No. PD-1137-15, 2016 WL 5799667 (Tex.Crim.App. Oct. 5, 2016). The indictment contained the statement that it was alleging an enhanced offense, but the body of the indictment contained no enhancement allegations. The State did not serve any separate pleading with the enhancement allegations. The defendant nevertheless pled guilty to the offense as enhanced. The defendant admitted the prior offenses in the course of the proceeding and made no objection to punishment under the enhanced punishment range. The court held the notice was sufficient to prevent the judgment from being void, which would be required where, as here, there was no objection to punishment under the enhanced range.

Here Appellant did not object to lack of notice or to the failure to amend the face of the indictment. During closing argument defense counsel admitted "we've been enhanced." (4 RR 69). The record failed to support a meritorious argument for reversal or modification of the judgment based on defects in the enhancement of the punishment range.

## PRAYER FOR RELIEF

Appellant prays this court sustain his first issue, find the evidence legally insufficient to support his conviction, reverse the trial court's judgment and render a judgment of acquittal.

Respectfully submitted:

_/s/__Clint _Sare____
Clint F. Sare
Texas Bar Num. 788354
P.O. Box 1694
Bryan Texas, 77806
cfs@sarelaw.com
(979) 822-1505

## CERTIFICATE OF COMPLIANCE
### WITH BRIEF LIMITATIONS AND SERVICE

I certify the foregoing document does not exceed the word count limitation of Rule of Appellate Procedure 9.4(i) based on the computer software word count of 3060 words.

I certify a copy of the foregoing brief was served on Christopher Thompson counsel for the State by electronic service on October 14, 2016.

_/s/__Clint Sare_____
Clint F. Sare