# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-24-00427-CR

---

**Gregory Alejandro Chavez, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE COUNTY COURT AT LAW NO. 5 OF WILLIAMSON COUNTY**
**NO. 23-04338-5, THE HONORABLE WILL WARD, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Gregory Alejandro Chavez was charged with assault family violence. *See* Tex. Penal Code § 22.01. The alleged victim in the case was Chavez's wife, Robyn Chavez.[1] The jury found Chavez guilty of the charged offense. Following the punishment hearing, the jury sentenced him to 365 days' confinement in county jail but recommended that he be placed on community supervision. *See id.* § 12.21. The trial court rendered its judgment of conviction consistent with the jury's verdict, suspended the imposition of the sentence, and placed Chavez on community supervision for twenty-four months. In one issue on appeal, Chavez contends that the evidence was insufficient to support his conviction. We will affirm the trial court's judgment of conviction.

---

[1] Because Chavez and his wife have the same surname, we will refer to his wife by her first name.

# BACKGROUND

Chavez and Robyn owned a home in Williamson County and lived in the home with their teenage son C.C.[2] When the couple began experiencing marital problems, Robyn moved out of the home and consulted with a divorce attorney. After Robyn moved out, Chavez's mother, Maria Samago, moved into the home to help care for C.C. Approximately three weeks later, Robyn and Chavez discussed her moving back into the home. Robyn decided to move back into the house on September 13, 2023.

Robyn asked her father, Timothy Pearson, to stay with her at the house while she moved back in. Robyn and Pearson arrived at the home while Chavez was away, and Pearson moved his luggage into the home. Once Chavez returned home that evening, a family dispute occurred beginning inside the home and later moving outside to the garage and driveway. Over the course of an hour that night, C.C. called 911 once, and Pearson called 911 twice. Police officers responded to the home three times. When the police responded the third time, Robyn and Pearson informed the police that Chavez hit Robyn's stomach with his hand. Chavez was arrested shortly thereafter, and Robyn was transported to the hospital.

Chavez was later charged with assault family violence. During the trial, the State called as witnesses Pearson and two officers who responded to the home that night. Additionally, the trial court admitted into evidence the following exhibits: a recording of Pearson's second 911 call, two videos Robyn made with her cellphone, footage from a security camera outside the house, footage from the body cameras of the responding officers, and photos of Robyn from when she was taken to the hospital.

---

[2] Because the child is a minor, we will refer to him by his initials. *See* Tex. R. App. P. 9.10(a)(3).

Pearson testified that on the night in question, Chavez told C.C. to call the police to tell them that Chavez did not want Pearson and Robyn in the home. According to Pearson, the police responded to the scene and informed Chavez that Pearson was Robyn's guest and had the right to be there for as long as Robyn wanted. When the police left, Chavez moved Pearson's and Robyn's belongings downstairs and then blocked the stairs with his body to prevent them from going to any of the bedrooms. Pearson then called the police to report that Chavez would not allow him to take his belongings to one of the bedrooms. Once the police arrived the second time, they told Chavez to separate himself from Robyn and Pearson and let them put their belongings away. The police left the scene again.

Shortly thereafter, Pearson called the police again to request help. Pearson testified that Chavez told Robyn and him to leave the house, grabbed a container holding Robyn's grandmother's ashes, and ran outside to the backyard before going to the garage. Chavez put the container on a shelf in the garage, threatened Pearson, and came toward Pearson before returning to the area near the shelf. After Pearson returned, Robyn went to collect the container while filming with her phone. Pearson explained that Chavez stopped Robyn with his hand by moving his arm toward her and hitting her in the abdomen as she reached for the container and that she "doubled forward, and then she stepped backward, kind of stumbled backwards." Even though Pearson described the effects of the hit, he admitted that he did not actually see Pearson's hand contact Robyn's stomach and stated that C.C. said that Chavez did not hit Robyn. Next, Pearson testified that Chavez dumped the ashes out on the ground. When discussing Robyn, Pearson stated that Robyn said Chavez assaulted her, had red marks on her stomach, and was crying because Chavez dumped out her grandmother's ashes.

3

During Pearson's testimony, the following exhibits were admitted and played for the jury: the recording of Pearson's second 911 call, one of the recordings Robyn made on her phone, and the surveillance footage from the camera outside the house. On the 911 call, Pearson stated that Chavez was making threats, threatened Pearson, pushed Robyn, and hit her in the stomach with his fist. While talking with the dispatcher, Pearson placed the call on speakerphone. The dispatcher asked if Chavez's hitting Robyn caused her pain, and Robyn responded, "yes, it did." Robyn also asked for paramedics to come to the house.

Regarding the recording from Robyn's cellphone, the audio portion was redacted, but the video showed Chavez staring at Robyn and shaking his head while C.C. stood behind him angrily communicating with Robyn and raising his middle finger. During this exchange, Samago, who was also present in the video, tried to calm C.C. down. Robyn moved away from Chavez and went further inside the garage. At that point, Chavez was no longer on the recording, but the camera started shaking and moved quickly back toward the driveway and away from Chavez. As Robyn moved back with her camera, Chavez's arm could be seen partially extended in Robyn's direction. After Robyn reached the driveway, she turned the camera back toward the garage and captured Samago holding Chavez to calm him down. Chavez quickly moved away from Samago while holding the canister with Robyn's grandmother's ashes. Chavez dumped the ashes on the driveway and used a garden hose to wash the ashes away.

The surveillance footage from outside the home showed Pearson in the driveway using his phone to call the police. While Pearson was on the phone, Robyn walked out of the garage toward Pearson while holding a phone in one hand and pointing to the garage behind her with her other hand. Robyn then turned around and headed back inside the garage. When

4

testifying about this recording, Pearson stated that Robyn was not holding her stomach and did not appear to be in pain at that time.

The first police officer witness testified that he went to the house three times that night. Further, the officer related that there were no allegations concerning violence during the first two times he responded. Concerning the third time, the officer recalled that Robyn was distraught, was holding her stomach, and was acting as if she were in pain. The officer described how he reviewed the footage that Robyn recorded on her phone and discussed how the video captured "the phone violently jerk as she tries to step away and what appears as some type of physical contact between" Chavez and Robyn. Although the officer mentioned that Chavez denied hitting Robyn, the officer also testified that Chavez's claim was not consistent with the video and statements from witnesses. The officer recalled taking photos of Robyn while at the hospital, and two of the photos were admitted into evidence. The officer admitted that he did not see a mark on Robyn's stomach in the photos, but he also explained that punches do not always leave visible injuries even in situations in which someone experiences pain. During his cross-examination, the officer admitted that the video taken by Robyn does not specifically show Chavez striking Robyn; that the surveillance footage from the camera outside the house did not capture Robyn cradling her stomach, limping, or exhibiting any type of injury; and that the surveillance footage did not document Pearson having a reaction to having seen Robyn's being assaulted.

The second officer testified that she also went to the house three times that night. Regarding the first two times, the officer explained that Chavez wanted Pearson out of the house but that no criminal activity had occurred. During her cross-examination, the officer stated that Pearson and C.C. expressed the desire to leave the house but that Robyn would not let C.C.

5

leave. Further, the officer related that Chavez expressed that he was concerned about C.C.'s safety due to threats made by Pearson; however, Chavez did not explain to the officer how C.C. was in danger. The officer recalled telling Chavez that she could not remove Pearson from the home because Pearson was Robyn's guest and warned Chavez that placing his hands on someone or blocking his or her path would be assaultive conduct. Further, the officer stated that during her second visit to the home, Pearson and Robyn appeared to be complying with the police officers' prior directive that the parties separate and remain in different areas of the house.

When testifying about the third visit to the home, the officer mentioned that Robyn reported being struck and appeared upset and that Chavez denied assaulting Robyn and claimed that his hands were in the air when Robyn approached him. The officer explained that Chavez's account was not consistent with the video Robyn made because the video showed that Chavez's hands were not in the air as Chavez claimed. Further, the officer testified that the video documented an apparent contact between Chavez and Robyn. While discussing Robyn, the officer mentioned that Robyn stated that she was in pain, appeared to be in pain, and had requested that paramedics be called to the scene.

During her testimony, footage from the second officer's body camera was admitted into evidence and played for the jury. On the recording, Chavez told the officer that Pearson came up from behind Robyn and that Pearson tried to hit C.C. Chavez related to the officer that he got between Pearson and C.C. Next, Chavez stated that Robyn ran up to him, that they bumped chests while he was blocking her, and that Robyn claimed he hit her. Chavez stated that he could not have hit Robyn because his hands were in the air the whole time.

The State did not call Robyn as a witness and rested its case after the police officers testified. In his case-in-chief, Chavez called his mother, Samago, to the stand.

6

Regarding the events leading up to the incident in question, Samago testified that Chavez told Robyn to ask Pearson to leave the home. Further, Samago related that C.C. and Robyn were arguing and that Pearson approached them to get in front of C.C. Next, Samago stated that Chavez stepped in front of Pearson out of concern for C.C. but that Chavez did not touch Pearson. Samago testified that this incident was recorded by Robyn in another video. During her testimony, that recording was admitted into evidence. The recording showed Chavez approaching Pearson before Samago pulled Chavez away.

Concerning the incident in question, Samago explained she was hugging C.C. and Chavez to calm them down, that Robyn tried to get her grandmother's ashes, and that Robyn bumped into Chavez because there was so little room in the garage. Samago stated that Chavez did not punch Robyn in the stomach but that Robyn told Pearson that Chavez assaulted her and asked him to call the police. Samago believed that Pearson and Robyn were trying to make Chavez hit Robyn and suffer consequences from that act. Additionally, Samago agreed that Chavez tore open the container holding Robyn's grandmother's ashes and washed the ashes away. During her cross-examination, Samago admitted that although she saw Chavez's hands in the air at some points, Chavez's hands were not in the air the whole time Robyn was recording. Additionally, Samago explained that Robyn and Chavez had reconciled and were living together at the time of trial.

After considering the evidence, the jury found Chavez guilty of assault family violence. During the punishment hearing, neither party called any witnesses. At the end of the hearing, the jury assessed Chavez's punishment at confinement for 365 days but recommended that he be placed on community supervision. The trial court rendered its judgment of conviction consistent with the jury's verdict.

7

Chavez appeals his conviction.

## STANDARD OF REVIEW AND GOVERNING LAW

In his issue on appeal, Chavez asserts that the evidence was insufficient to support his conviction for assault. When reviewing the sufficiency of the evidence, we view all the evidence in the light most favorable to the judgment to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020). In making this determination, "[w]e view the evidence in the light most favorable to the verdict and consider all of the admitted evidence, regardless of whether it was properly admitted." *Stahmann*, 602 S.W.3d at 577. "The jury is the sole judge of credibility and weight to be attached to the testimony of the witnesses." *Id.* "Juries can draw reasonable inferences from the evidence so long as each inference is supported by the evidence produced at trial," *id.*, and are "free to apply common sense, knowledge, and experience gained in the ordinary affairs of life in drawing reasonable inferences from the evidence," *Eustis v. State*, 191 S.W.3d 879, 884 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). "When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict and defer to that determination." *Merritt v. State*, 368 S.W.3d 516, 525-26 (Tex. Crim. App. 2012).

Appellate courts must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). Appellate courts also must bear in mind that "direct and circumstantial evidence are treated equally" and that "[c]ircumstantial evidence is as probative as direct evidence in establishing the

guilt of an actor" and "can be sufficient" on its own "to establish guilt." *Kiffe v. State*, 361 S.W.3d 104, 108 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). Furthermore, reviewing courts "measure the sufficiency of the evidence by the so-called hypothetically correct jury charge, one which accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." *See DeLay v. State*, 465 S.W.3d 232, 244 n.48 (Tex. Crim. App. 2014). The evidence is legally insufficient if "the record contains no evidence, or merely a 'modicum' of evidence, probative of an element of the offense" or if "the evidence conclusively establishes a reasonable doubt." *Kiffe*, 361 S.W.3d at 107 (quoting *Jackson*, 443 U.S. at 320).

Under the Penal Code, a person commits the offense of assault if he "intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse." Tex. Penal Code § 22.01(a)(2). Although it did not elevate the punishment level in this case because this was Chavez's first conviction for assault family violence, the assault provision contains additional elements for assault family violence that may be used to raise the offense level for subsequent family violence charges. *Id.* § 22.01(b). In those cases, the offense is committed against "a person whose relationship to or association with the defendant is described by" the Family Code. *Id.* § 22.01(b); *see* Tex. Fam. Code § 71.003 (specifying that spouse is considered family member). In this case, the charging complaint alleged that Chavez "intentionally, knowingly, or recklessly cause[d] bodily injury to Robyn Chavez, a member of the defendant's family, a member of the defendant's household, or an individual with whom the defendant has or has had a dating relationship, by striking her in the stomach area with his hand."

9

"'Bodily injury'" is defined as "physical pain, illness, or any impairment of physical condition," Tex. Penal Code § 1.07(a)(8), and a factfinder "may infer that a victim actually felt or suffered physical pain because people of common intelligence understand pain and some natural causes of it," *Wingfield v. State*, 282 S.W.3d 102, 105 (Tex. App.—Fort Worth 2009, pet. ref'd). "[N]o witness—including the victim—need testify that the victim felt pain." *Coleman v. State*, 631 S.W.3d 744, 751 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd). "Any physical pain, however minor, will suffice to establish bodily injury." *Garcia v. State*, 367 S.W.3d 683, 688 (Tex. Crim. App. 2012).

"A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." Tex. Penal Code § 6.03(a). "Intent can be inferred from the acts, words, and conduct of the accused." *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995). "A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result." Tex. Penal Code § 6.03(b). "A person acts recklessly, or is reckless, with respect to . . . the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the . . . result will occur." *Id.* § 6.03(c). "The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." *Id.*

## DISCUSSION

When challenging the sufficiency of the evidence, Chavez highlights the testimony from trial that he asserts indicates that no assault occurred. For example, he notes that Samago testified that she was present during the alleged incident and never saw Chavez hit Robyn and that she believed Pearson and Robyn tried unsuccessfully to provoke him to hit Robyn. Similarly, Chavez emphasizes the portion of Pearson's testimony where he admitted that he was not able to see Chavez's hand contact Robyn's body. Additionally, witnesses testified that footage of Robyn taken by the outside security camera did not seem to show her in pain. Next, Chavez highlights that Robyn did not testify at trial and argues that the jury should have but did not make the reasonable inference from her absence that no assault occurred. Moreover, Chavez challenges the propriety of the police investigation by arguing that the officers should have interviewed more witnesses, including C.C., and should have allowed Samago to provide additional details regarding the incident. Further, Chavez asserts that there was no direct evidence that Robyn suffered any bodily injury because she did not testify and suggests that the jury could not reasonably infer from the evidence presented at trial that she suffered bodily injury. On the contrary, Chavez insists that the evidence established at most that she experienced emotional pain after having watched him "destroy her beloved grandmother's ashes." As support, Chavez notes that Pearson testified that Robyn started crying after Chavez dumped out the ashes. For these reasons, Chavez argues that the evidence was insufficient to support his conviction.

Although Chavez highlights the testimony from Samago asserting that no assault occurred, the jury was tasked with deciding what weight, if any, to give this testimony. *Cf. Martinez v. State*, 17 S.W.3d 677, 683 (Tex. Crim. App. 2000) (noting that trial court was free to

11

disregard testimony of appellant's mother). Even though Chavez faults the State for not calling Robyn as a witness, the evidence can be sufficient to support a conviction for assault even when a victim does not testify that she was assaulted. *See Salley v. State*, 25 S.W.3d 878, 881 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (determining that evidence was sufficient even though victim said she did not remember events leading to her husband's arrest); *see also Coleman*, 631 S.W.3d at 752 (noting that party provided no authority to support argument that evidence is insufficient to support assault conviction if complainant does not testify). To the degree that Chavez is faulting the investigation performed by the police, an appellate court's role in conducting a sufficiency review is not to consider what additional evidence might have been gathered through a more thorough investigation but to consider the evidence that was presented at trial and decide whether that evidence was sufficient to support the conviction. *See Merritt*, 368 S.W.3d at 526 (noting that appellate court improperly conducted sufficiency review by improperly using "a 'divide-and-conquer' approach, separating each piece of evidence offered to support Appellant's conviction" and by speculating "on the evidence State did not present").

Moreover, evidence other than that referenced by Chavez was introduced at trial pertaining to the elements of the charged offense. Pearson testified that Robyn and Chavez were married. *See* Tex. Penal Code § 22.01(b); Tex. Fam. Code § 71.003; *see also Baban v. State*, 672 S.W.3d 655, 662 (Tex. App.—Houston [14th Dist.] 2023, pet. ref'd) (noting in sufficiency analysis that complainant testified that she was married to defendant). Although Pearson said that he was unable to see Chavez strike Robyn, other evidence was introduced at trial from which the jury could have concluded that Chavez struck Robyn's stomach with his hand, and we must presume that the jury resolved any inconsistency in the evidence in favor of conviction and defer to that resolution. *Merritt*, 368 S.W.3d at 525-26. For example, the recording of the

12

incident made by Robyn showed Chavez shaking his head angrily at Robyn, showed the camera moving quickly as if something struck the camera or Robyn, and showed Chavez's arm partially extended in Robyn's direction as she retreated. The police officers who testified at trial explained that the video was consistent with Robyn's having been struck.

Additionally, although Pearson could not see a strike from where he was, he described movements by Robyn at that time that were consistent with her having been struck, including saying that she doubled over going forwards before stumbling backwards. Pearson also testified that Robyn stated that Chavez hit her in the stomach. Further, on the recording of the 911 call made by Pearson, Robyn confirmed that Chavez hit her. *See Coleman*, 631 S.W.3d at 752 (concluding that evidence was sufficient in part where 911 recording captured complainant saying that defendant was hitting her and where officer saw defendant slap her); *see also Uhler v. State*, No. 03-21-00060-CR, 2021 WL 4444963, at *3-4 (Tex. App.—Austin Sept. 29, 2021, no pet.) (mem. op., not designated for publication) (determining that evidence was sufficient to support conviction for assault family violence even though witness did not see defendant actually strike his wife with stick where witness saw events leading up to alleged assault and other evidence indicated that strike occurred).

In addition to making inferences concerning Chavez's mental state from the evidence pertaining to the assault described above, *see Laster v. State*, 275 S.W.3d 512, 524 (Tex. Crim. App. 2009) (explaining that one's actions generally provide reliable evidence of one's intent and that jury could infer mental state to inflict bodily injury from defendant's actions), the jury could have also considered the evidence regarding the events leading up to and following the incident when determining whether Chavez had the requisite mental state at the time of the incident, *see Patrick*, 906 S.W.2d at 487 (noting that defendant's intent can be

13

inferred from his acts, words, and conduct); *Martin v. State*, 246 S.W.3d 246, 264 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (noting that defendant's acts before and after alleged offense can help establish culpable mental state). Pearson testified that Chavez had been preventing Pearson and Robyn from putting their belongings upstairs in the bedroom and had blocked them from going upstairs. In addition, Pearson related that Chavez took Robyn's grandmother's ashes and ran out of the house. One of the recordings Robyn made showed that when she caught up with Chavez in the garage, he was visibly angry with her. Further, the recording captured how after the incident, Chavez opened the container, dumped the ashes on the ground, and washed them away. From this evidence, the jury could have reasonably inferred that Chavez acted at least recklessly at the time of the incident. *See* Tex. Penal Code § 6.03; *see also Coleman*, 631 S.W.3d at 752 (determining that evidence established mens rea to commit assault family violence).

Concerning bodily injury, the first police officer testified that photos taken of Robyn did not show a visible injury; however, both officers explained that assaults do not always leave visible injuries. *See Aguilar v. State*, 263 S.W.3d 430, 434 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd) (explaining that juries may infer "physical pain from the altercation itself even without direct evidence"). The first officer recalled that Robyn was holding her stomach, and both officers explained that Robyn appeared to be in pain. *See Spanos v. State*, No. 01-00-00614-CR, 2002 WL 243395, at *4 (Tex. App.—Houston [1st Dist.] Feb. 21, 2002, no pet.) (op., not designated for publication) (noting in sufficiency review of evidence pertaining to bodily injury that police officers testified that victim appeared to be in pain). Additionally, Pearson stated that he saw red marks on Robyn's stomach from the assault. The recording of the 911 call captured Robyn saying that she experienced pain when she was hit. *Cf. Laster*,

14

275 S.W.3d at 524 (noting that victim's testimony that she felt pain when defendant grabbed her was sufficient to establish bodily injury).

Given our standard of review and the inferences that the jury was free to make from the evidence presented at trial, we conclude that the evidence was sufficient to support Chavez's conviction for assault. *Cf. Dunn v. State,* No. 05-10-00196-CR, 2011 WL 227715, at *3 (Tex. App.—Dallas Jan. 26, 2011, pet. ref'd) (op., not designated for publication) (determining that evidence was sufficient to support assault conviction even though defendant and alleged victim both denied that defendant intentionally struck her). Accordingly, we overrule Chavez's issue on appeal.

### CONCLUSION

Having overruled Chavez's issue on appeal, we affirm the trial court's judgment of conviction.

_____
Karin Crump, Justice

Before Justices Triana, Theofanis, Crump

Affirmed

Filed:  April 4, 2025

Do Not Publish

15