**Opinion filed March 12, 2015**



**In The**

# Eleventh Court of Appeals

_____

## No. 11-12-00134-CR

_____

## JACK THEOTRICE CLARK, JR., Appellant
## V.
## THE STATE OF TEXAS, Appellee

**On Appeal from the 350th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 9708-D**

### O P I N I O N

The trial court convicted Appellant, Jack Theotrice Clark, Jr., of the offense of assault on a public servant.[1]  After Appellant pleaded "true" to an enhancement paragraph, the trial court assessed his punishment at confinement for a term of ten years.  In his sole issue on appeal, Appellant challenges the sufficiency of the evidence.  We affirm.

### I. *The Charged Offense*

The grand jury indicted Appellant for the offense of assault on a public servant.  The indictment alleged that, on or about September 13, 2009, Appellant

---

[1]TEX. PENAL CODE ANN. § 22.01(b)(1) (West Supp. 2014).

intentionally and knowingly caused bodily injury to Officer Christopher Jennings, a person Appellant knew was a peace officer attempting to lawfully discharge his official duty, by biting Officer Jennings on the finger. A person commits the offense of assault on a public servant if he intentionally, knowingly, or recklessly causes bodily injury to a person the actor knows is a public servant while the public servant is lawfully discharging an official duty. PENAL § 22.01(a)(1), (b)(1).[2] In addition, the indictment included an enhancement paragraph that listed a prior felony conviction for delivery of marihuana. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.120 (West 2010) (Offense: Delivery of Marihuana). An offense of assault on a public servant with an enhancement is punished as a felony of the second degree. *See* PENAL §§ 12.42(a), 22.01(b)(1).

Appellant pleaded "not guilty." The trial court found Appellant guilty of assault on a public servant.

## II. *Evidence at Trial*

John Wilson, a police officer with the Abilene Police Department, responded to a disturbance call early in the morning on September 13, 2009. He wore an Abilene police uniform and a duty belt and drove a marked patrol car. Appellant approached Officer Wilson's patrol car as Officer Wilson arrived on the scene of the disturbance call. Officer Wilson asked Appellant to stand in front of the patrol car so the in-car video camera could record their interaction. Officer Christopher Jennings arrived at the scene shortly after Officer Wilson; Officer Jennings also wore an Abilene police uniform with badges and drove a marked patrol car.

Officer Wilson requested, for safety reasons, that Appellant keep his hands out of his pants pockets. Officer Wilson was concerned because he was not sure if Appellant was armed. Appellant initially stood in front of the patrol car but later

---

[2]Although the statute allows for a conviction based on reckless conduct, the indictment did not include reckless conduct in its charge. Therefore, we will only consider whether Appellant's conduct was intentional or knowing.

moved out of view from the video camera, and he continued to place his hands in his pockets. After several requests by Officer Wilson for Appellant to remove his hands from his pockets, Officer Wilson grabbed Appellant's wrist and employed a "soft hand technique" to get Appellant's hands out of Appellant's pockets.

Appellant resisted, and a struggle ensued. Appellant then tried to escape to his vehicle. Officer Wilson said that, at this time, he used a "hard hands" technique, sprayed Appellant with pepper spray, and struck Appellant with an ASP[3] several times, but Appellant refused to comply with the orders. A third Abilene police officer, Chris Lazirko, arrived on scene during the struggle, and the three officers—Wilson, Jennings, and Lazirko—finally subdued Appellant.

Officer Jennings corroborated Officer Wilson's testimony that they had asked Appellant a number of times to remove his hands from his pockets because they were unsure if he was armed and were concerned about their safety. After Appellant repeatedly put his hands back in his pockets, both Officer Jennings and Officer Wilson approached Appellant, and when Officer Wilson grabbed Appellant's arm, Appellant resisted. The officers were then forced to use pepper spray, punches, and a metal baton or ASP to control Appellant and to keep him from grabbing the officers' guns.

During the struggle, Appellant drew his head back and then lunged forward to bite Officer Jennings's finger or hand, and Appellant bit Officer Jennings on the index finger, which broke the skin, and also on the middle finger. Officer Jennings said that the bite, which he thought Appellant did intentionally, caused "[e]xcruciating pain."

Appellant testified that he pulled his arm away from Officer Wilson's "soft hand technique" because he believed contact was not justified. He said that the officers hurt him and that he tried to escape from their physical contact. Appellant

___
[3]An ASP is a metal club or baton.

also said that he was never told why he was being detained until after he was handcuffed by the officers. Appellant said that the officers sprayed pepper spray on their hands and put their fingers in his mouth and that it was impossible for his teeth not to touch their fingers. Appellant claimed he never bit anyone and never wanted to hurt the police officers even though he was strong enough to do so.

Evette Aguilar, the girl with whom Appellant had argued before the police arrived, witnessed the struggle and testified that she never saw Appellant bite either officer. Martha Anne Walke, a doctor that treated Appellant two days after the struggle, testified that Appellant told her that a police officer scratched the inside of his mouth; she also testified that she observed a scratch in Appellant's mouth. Officer Jennings denied that he put his fingers in Appellant's mouth.

After the incident, Officer Jennings went to Hendrick Medical Center, where medical personnel treated and took pictures of his wounds. Steven Kastl, a board-certified emergency medicine doctor, testified that he observed bite marks on Officer Jennings's left index and middle fingers at the hospital.

The defense called Robert Glenn Williams, a dentist and board-certified forensic odontologist,[4] to testify about the marks on Officer Jennings's fingers. Dr. Williams could not conclude one way or another, based upon a review of photographs of the supposed bite marks, whether a bite caused the wound depicted in the pictures. Dr. Williams also opined that Dr. Kastl's testimony—that he observed bite marks—should be discounted because Dr. Kastl did not apply any forensic techniques and was swayed by Officer Jennings's belief that the wounds came from a bite.

---

[4]A forensic odontologist is a dentist that specializes in the application of dentistry to the law. They help identify deceased people, compare bite marks, and serve as expert witnesses, among other things.

4

### III. *Issue Presented*

Appellant asserts in a single issue that the evidence was insufficient to support his conviction.

### IV. *Standard of Review*

We review the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

The trier of fact is the sole judge of the weight and credibility of the evidence, and a reviewing court may not reevaluate the weight and credibility of the evidence so as to substitute its own judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). The reviewing court must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

### V. *Analysis*

Appellant argues that the evidence was insufficient to show that he bit Officer Jennings and that Officer Jennings was acting in the lawful discharge of his official duty when the incident occurred. The Texas Court of Criminal Appeals has broadly interpreted the definition of bodily injury to include "even relatively minor physical contacts so long as they constitute more than mere offensive touching." *Lane v. State*, 763 S.W.2d 785, 786 (Tex. Crim. App. 1989). Lawful

5

discharge of an official duty "means that the public servant is not criminally or tortiously abusing his office as a public servant." *Hall v. State*, 158 S.W.3d 470, 475 (Tex. Crim. App. 2005). Examples of such abuse include acts of "official oppression" or "the use of unlawful, unjustified force." *Id.* (citing PENAL § 39.03 (Official Oppression)). Knowledge that the assaulted person was a public servant is presumed if the person was wearing a distinctive uniform or badge that indicated the person's employment as a public servant. PENAL § 22.01(d).

Direct evidence of each element is not required to support a conviction; circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 14–15 (Tex. Crim. App. 2007) (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)). In addition, "a jury may infer that a victim actually felt or suffered physical pain because people of common intelligence understand pain and some of the natural causes of it." *Wingfield v. State*, 282 S.W.3d 102, 105 (Tex. App.—Fort Worth 2009, pet. ref'd) (citing *Randolph v. State*, 152 S.W.3d 764, 774 (Tex. App.—Dallas 2004, no pet.)). Juries may utilize common sense and apply common knowledge gained from ordinary experiences in life to draw reasonable inferences from the evidence. *Id.* (citing *Wawrykow v. State*, 866 S.W.2d 87, 88–89 (Tex. App.—Beaumont 1993, pet. ref'd) (finding that a rational jury could have inferred that pushes to the chest caused "physical pain")); *see also Goodin v. State*, 750 S.W.2d 857, 859 (Tex. App.—Corpus Christi 1988, pet. ref'd) (stating that people of common intelligence understand what naturally causes physical pain).

*A. Bodily Injury Element*

Appellant claims there is insufficient evidence to prove he bit Officer Jennings. An assault against a public servant is a result-oriented offense. *Brooks v. State*, 967 S.W.2d 946, 950 (Tex. App.—Austin 1998, no pet.); *see Johnson v. State*, 364 S.W.3d 292, 298 (Tex. Crim. App. 2012). The focus is on the result of

6

the defendant's action and his culpable mental state, not on the precise act or the nature of the conduct committed by the defendant. *Johnson*, 364 S.W.3d at 298; *Brooks*, 967 S.W.2d at 950. The State presented as evidence a picture of Officer Jennings's wounded fingers; the picture was taken at the hospital after the struggle. Dr. Kastl, the emergency room doctor, testified that he observed the injuries on Officer Jennings's fingers. Officer Jennings testified that his fingers were injured by Appellant and that the injury was painful. Officer Jennings also testified that Appellant bit two of his fingers and that the bite broke the skin on his index finger. The State adduced sufficient evidence that Appellant knowingly or intentionally caused bodily injury to Officer Jennings's finger.

### B. Element of Acting in Lawful Discharge of Duty

Appellant also argues that the testimony of Stan Standridge, Chief of Police for the City of Abilene, is evidence that Officer Jennings did not act in the lawful discharge of his duty. An officer investigating a "suspicious circumstance," while in uniform and driving a marked patrol car, is evidence the officer is acting in the lawful discharge of his official duty. *Farris v. State*, 819 S.W.2d 490, 496 (Tex. Crim. App. 1990), *overruled on other grounds by Riley v. State*, 889 S.W.2d 290, 298 (Tex. Crim. App. 1993). Chief Standridge also acknowledged that it is Abilene police policy "that when feasible the officers must state their purpose to detain or arrest a suspect, give the reason for the detention or arrest, and warn the suspect that force will be used."

The evidence at trial indicated that the officers, both in uniform and driving marked patrol cars, reported to the scene of the struggle to investigate a disturbance call. During their encounter with Appellant, Appellant repeatedly failed to comply with their requests to stay in front of the patrol car and keep his hands out of his pockets. When Appellant failed to comply, Officer Wilson attempted to enforce compliance through a "soft hand technique," but Appellant

7

resisted. The officers then escalated their attempts to control Appellant and used "hard hands," pepper spray, and an ASP to force his compliance. Appellant continued to resist and was eventually subdued by three officers. Officer Jennings testified that, because of Appellant's actions before and during the struggle, the officers had no chance to inform Appellant that he was being detained.

We conclude from our review of the record that there is sufficient evidence from which the trier of fact could have determined beyond a reasonable doubt that Appellant knowingly or intentionally injured Officer Jennings's finger while the officer was acting in the lawful discharge of his official duties. *See Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. We overrule Appellant's sole issue.

## VI. *This Court's Ruling*

We affirm the judgment of the trial court.


MIKE WILLSON

JUSTICE


March 12, 2015

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

8