

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-21-00225-CR
_____

JOSEPH GONZALES, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 140th District Court
Lubbock County, Texas
Trial Court No. 2019-417,224; Honorable Douglas Freitag, Presiding

November 14, 2022

MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and YARBROUGH, JJ.

Joseph Gonzales appeals his convictions on two counts of aggravated kidnapping. The convictions arose from the following incident. He was the subject of an outstanding arrest warrant when spied by an officer. The officer followed appellant, who rode as a passenger in a pickup truck at the time. Eventually, appellant saw the officer, left his truck, ran towards the home of Ruiz and Saucedo, and entered it. Then, he refused to

exit when called upon by police to do so.  At one point, he alluded to having "hostages" and that the officers would have to kill him.  Later, when again told to release the "hostages," appellant replied that the officers were "going to have to make" him.  An officer also witnessed appellant holding a knife.

Eventually, Ruiz and Saucedo were released after appellant demanded and received the opportunity to speak with his girlfriend.  Upon her exit, Ruiz both spoke with an officer and displayed to the official various text messages she sent on her cell phone while captive.  The messages included those stating: 1) "[h]e had a knife and won't let us out the house," 2) "[h]e won't let us leave.  I'm at my house.  I'm scared" 3) "[t]he window in the backroom is bordered [sic] up," 4) "[w]hat do I do I'm scared," 5) "[h]e doesn't know I have the phone," and 6) "[t]hey can come in through the back door quitely [sic] or the back window."  Appellant also surrendered, and during an ensuing search of the house, the officers found a switchblade knife on the floor.  This and other evidence convinced a jury to convict him of the aforementioned charges.

We address the nine issues raised in appellant's 91-page brief, and, upon doing so, affirm.

### *Sufficiency of the Evidence*

Our analysis begins with issues one, three, and four.  Through them, appellant contends that the State failed to prove various elements of the charged offense, such as the requisite mens rea, fear and intimidation, and the lack of consent.  We overrule each point.

The pertinent standard of review is that described in *Zuniga v. State*, 551 S.W.3d 729 (Tex. Crim. App. 2018).  We apply it here.

Next, there are various ways in which one may commit aggravated kidnapping. Reading the State's indictment indicates it apparently opted to blend two of the different ways. That is, it alleged in count one that appellant "did then and there intentionally abduct . . . RUIZ, without the consent of the said . . . RUIZ, with intent to prevent the liberation of the said RUIZ, by using or threatening to use deadly force and with intent to use said victim as a shield or hostage and the defendant did then and there use or exhibit a deadly weapon, to-wit:  knife, during the commission of said offense."  Through the second, it averred that he "did then and there intentionally abduct . . . SAUCEDO, without the consent of the said SAUCEDO, with intent to prevent the liberation of the said SAUCEDO, by using or threatening to use deadly force and with intent to use said victim as a shield or hostage and the defendant did then and there use or exhibit a deadly weapon, to-wit: knife, during the commission of said offense."  These allegations reveal a blending of section 20.04(a)(2) of the Penal Code with section 20.04(b).  Per the former, one commits the crime by "intentionally or knowingly abduct[ing] another person with the intent to . . . use him as a shield or hostage," TEX. PENAL CODE ANN. § 20.04(a)(2), and per the latter by "intentionally or knowingly abduct[ing] another person and us[ing] or exhibit[ing] a deadly weapon during the commission of the offense."  *Id.* at § 20.04(b).[1] With that in mind, we turn to the appeal at hand.

The circumstances of the incident described in the opening paragraph to this opinion came from the evidentiary record before the jury.  When read together in a light

---

[1] The legislature defined "abduct" as "to restrain a person with intent to prevent . . . liberation by:  . . . using or threatening to use deadly force," TEX. PENAL CODE ANN. § 20.01(2)(B), and "restrain" to mean "restrict a person's movements without consent, so as to interfere substantially with the person's liberty, by moving the person from one place to another or by confining the person."  *Id.* at § 20.01(1).  It further stated that the requisite restraint may be accomplished through "force, intimidation, or deception" if it lacks consent.  TEX. PENAL CODE ANN. § 20.01(1)(A).

most favorable to the verdict, they allow a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. In utilizing their common sense, intelligence, and knowledge gained from life experiences, *see Clark v. State*, 461 S.W.3d 244, 248 (Tex. App.—Eastland 2015, pet. ref'd) (acknowledging a juror's authority to use same when determining guilt or innocence), jurors could rationally interpret appellant's own use of the word "hostages" as evidence of appellant's conscious objective and desire to both seize and hold Ruiz and Saucedo against their will. So too did they see Ruiz's text messages revealing that appellant would not "let *us* leave" and possessed a knife.

That the evidence may have been contradictory or interpreted in different ways matters not here. As we often iterate, evidentiary conflicts and issues about a witness' credibility are for the jury to resolve. *Robinson v. State*, 568 S.W.3d 718, 722 (Tex. App.—Amarillo 2019, no pet.). Not us. Instead, we defer to its decision regarding those matters. *Id.*; *Zuniga*, 551 S.W.3d at 732-33. And, in so deferring, we find legally sufficient evidence supporting conviction coming from not only what the officers and "hostages" saw but also from what appellant himself said.

### *Charge Error*

Through his second, fifth, and sixth issues, appellant contends the trial court erred in: 1) failing to provide in its jury charge a non-statutory definition of the word "intimidation" that included reference to a "reasonable belief" of harm; 2) instructing jurors that a "knowingly" culpable mental state would satisfy the offense; and 3) omitting the passage "without consent" from the application paragraphs. We overrule them.

Regarding the definition of intimidation, it is somewhat unclear what appellant wants. We read his contention as suggesting that the trial court erred in failing to define

the word "intimidation" and include in that definition a passage requiring the fear arising from such intimidation to be reasonable. Yet, he cites us to no legal authority requiring the trial court to define "intimidation" in the first instance. Nor does he provide any substantive analysis explaining why the definition was necessary, unless, of course, we deem his reference to instructing a jury on defensive theories as being that missing substance. And in our assuming that reference is the missing substance, then another problem arises. If the definition somehow constitutes a defensive issue, as appellant seems to suggest, he failed to request its inclusion in the charge. Since such a default waives a defense, *Vega v. State*, 394 S.W.3d 514, 518-19 (Tex. Crim. App. 2013) (stating that a trial judge has no duty to *sua sponte* instruct the jury on unrequested defensive issues and one cannot complain on appeal about their absence unless requested), the trial court need not have included it. So whether considered as waived due to inadequate briefing, *see* Rule 38.1(i) of the Texas Rules of Appellate Procedure (requiring the appellant to provide both citation to legal authority and substantive analysis or risk waiver), or the failure to request a defensive instruction, the complaint was waived.

Regarding the inclusion of the mens rea "knowingly" into the abstract legal description of aggravated kidnapping, we acknowledge that the mens rea with which appellant was accused of acting within the indictment consisted only of "intentionally abducting" Ruiz and Saucedo. Moreover, appellant objected to this before the charge was read to the jury. Nevertheless, through its application paragraph, the trial court instructed the jury to find appellant guilty of aggravated kidnapping if it determined that he "intentionally abduct[ed]" them. The State conceded that inclusion of "knowingly" in the abstract paragraph was error.

5

Had no objection been uttered by the defendant at trial, then the mistake would be inconsequential. *See Edwards v. State*, 228 S.W.3d 450, 452-53 (Tex. App.—Amarillo 2007, pet. ref'd) (so holding when the application paragraph is correct while the abstract one is not). Yet, objection was made. So, we must determine if appellant suffered some harm from it; that is, whether the error was calculated to injure the rights of the defendant. *Barringer v. State*, No. 07-16-00068-CR, 2017 Tex. App. LEXIS 9327, at *15 (Tex. App.—Amarillo Oct. 3, 2017, no pet.) (mem. op., not designated for publication). And, harm must be actual, not theoretical. *Jordan v. State*, 593 S.W.3d 340, 347 (Tex. Crim. App. 2020). Assessing it requires us to evaluate the whole record, including the jury charge, contested issues, weight of the probative evidence, arguments of counsel, and other relevant information. *Id.* at 347.

As noted earlier, the application paragraphs accurately described the prerequisites to conviction for aggravated kidnapping. Furthermore, the theory pursued by the State focused on appellant intentionally, as opposed to knowingly, abducting his "hostages." We also note that neither party referenced the mens rea of "knowingly" during their respective closing arguments. And, as illustrated through our discussions of issues one, three, and four, the evidence certainly supported the jury's verdict that appellant "intentionally abducted" those whom he expressly deemed to be his "hostages." In short, we encountered no circumstances suggesting that the mistake was calculated to injure appellant's rights.

Regarding the omission of the phrase "without consent" from the application paragraphs of the charge, appellant concedes he did not broach the topic to the trial court. This leads us to conclude that even if the omission were error, appellant suffered no

egregious harm. This is so because the trial court's definitions on page two of its charge covered the matter. That is, the court defined "abduct" to "mean[] to restrain a person . . ." and "restrain" to "mean[] to restrict a person's movements *without consent*." (Emphasis added). So, the application paragraphs implicitly required proof that appellant's abduction of his "hostages" was without their consent. And, unlike appellant's insinuation otherwise, we do not ascribe laziness to the jurors; we do not think them too lazy "to reach back a few pages into the abstract paragraphs and properly apply the legal rules and concepts in the abstract paragraphs . . . ." Our obligation is to presume they followed the trial court's instructions as presented. *De La Torre v. State*, 583 S.W.3d 613, 620-21 (Tex. Crim. App. 2019).

### *Admission of Text Messages*

Appellant next complains, in issues seven and eight, about the admission into evidence of Ruiz's text messages. Admitting them supposedly violated evidentiary rules barring hearsay and his right to confront witnesses. We overrule them.

The standard of review is abused discretion. *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012). So long as the trial court's decision falls within the zone of reasonable disagreement, its discretion was not abused. *Id.* That said, we begin with the hearsay objection.

The text messages were written by Ruiz and sent to an unnamed third party. They describe the abduction by appellant, allude to his knife, reveal her fear, and solicit assistance from the person. They end with the latter referring to Ruiz as "Mama," asking "you okay," and beseeching Ruiz to "[p]lease answer me." Given their substance, their indication of Ruiz being in a highly emotional state while appellant held her as his

7

"hostage," and the continuation of that state once freed from the house, jurists could reasonably debate about whether they constituted excited utterances.

Such utterances are statements "relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." TEX. R. EVID. 803(2). "The critical question . . . is not the specific type of emotion that the declarant is dominated by—anger, fear, happiness—but whether the declarant was still dominated by the emotion caused by the startling event when she spoke." *Coble v. State*, 330 S.W.3d 253, 294 (Tex. Crim. App. 2010). Given the circumstances surrounding the text messaging and Ruiz's apparent emotional state while texting, the trial court's decision to admit the messages as excited utterances (which is an exception to the hearsay rule) fell within the zone of reasonable disagreement.

As for the Confrontation Clause attack, admission of a hearsay statement may implicate a defendant's constitutional right to confront witnesses. That occurs when the surrounding circumstances objectively indicate that the primary reason the statement was made was to establish or prove past events potentially relevant to a later criminal prosecution, i.e., when they are testimonial in nature. *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008); *Gilbert v. State*, No. 07-16-00378-CR, 2017 Tex. App. LEXIS 10039, at *4 (Tex. App.—Amarillo Oct. 25, 2017 pet. ref'd) (mem. op., not designated for publication). Hearsay statements evincing pleas for help or made to provide information enabling others to end an ongoing emergency situation, such as a 911 call, generally fall outside that realm. *Gilbert*, 2017 Tex. App. LEXIS 10039, at *4-5. A reasonable jurist could have interpreted the circumstances surrounding Ruiz's texts as comparable to making a 911 call. She was revealing ongoing criminal events, describing

8

her fear while in the midst of those events, and soliciting assistance from the third party. Thus, deeming them non-testimonial and free from constitutional limitation also fell within the zone of reasonable disagreement.

### *Impeach Ruiz*

Through his ninth and last issue, appellant argues the trial court erred in excluding evidence of Ruiz's reputation in the community for truth and veracity. We overrule the issue.

To be admissible, an opinion about one's reputation for truthfulness in the community must be based on discussions with others about the person or hearing others discuss the person's reputation but not just on personal knowledge. *Adanandus v. State*, 866 S.W.2d 210, 225-26 (Tex. Crim. App. 1993) (quoting *Wagner v. State,* 687 S.W.2d 303, 313 (Tex. Crim. App. 1985)); *Pinion v. State*, No. 08-13-00045-CR, 2015 Tex. App. LEXIS 4018, at *14-15 (Tex. App.—El Paso April 22, 2015, no pet.) (mem. op., not designated for publication) (quoting *Adanandus v. State*, *supra*). That is, the opinion must be based on a synthesis of observations of and discussions with others resulting in a conclusion about the individual's reputation. *Adanandus v. State*, 866 S.W.2d at 226. Furthermore, a witness intending to pontificate about another's reputation is an appropriate one if he or she has a substantial familiarity with the reputation of the person about whom the witness is supposed to testify. *Lopez v. State*, No. 04-07-00472-CR, 2008 Tex. App. LEXIS 2303, at *3-4 (Tex. App.—San Antonio April 2, 2008, pet. ref'd) (mem. op., not designated for publication); *Garza v. State*, 18 S.W.3d 813, 824 (Tex. App.—Fort Worth April 6, 2000 pet. ref'd).

Again, appellant endeavored to obtain an opinion from a witness about Ruiz's reputation for truthfulness. During voir dire, the witness indicated she lived in the same community as did Ruiz, the town was small, "everybody knows everything," and Ruiz was known to not tell the truth. Further query revealed that Ruiz had a reputation for "[b]eing a dope head, being on drugs" and having had her children "tooken [sic] away before she went to prison." Yet, the witness conceded to having never personally heard Ruiz lie or to experiencing instances where Ruiz lied to others.

Missing from the foregoing exchange were references to the witness personally discussing with others the topic of Ruiz's truthfulness or having others discuss that particular topic. At best, her voir dire testimony suggested that the "everybody [who] know [sic] everything" in the small town knew Ruiz lost her children and apparently consumed drugs. Having a reputation as a drug addict and possibly a less than adequate parent does not necessarily establish the character trait of untruthfulness, or so the trial court could have reasonably concluded. Without being provided evidence that the witness discussed with others or overheard others discuss the topic of Ruiz's truthfulness, we cannot say the trial court's decision to exclude the witness's opinion about Ruiz's reputation in the community for truthfulness fell outside the zone of reasonable disagreement.

### *Sua Sponte Correction of the Judgment*

While reviewing the record, we discovered that the judgments state appellant pled "true" to the enhancement paragraphs in the indictment. The reporter's record actually reveals that the trial court "accept[ed] and enter[ed] a plea of not true as to each . . ."

10

allegation.  Having the authority to modify a judgment so it speaks the truth, we exercise it by reforming those here to reflect pleas of "not true."

### *Conclusion*

Having overruled each of appellant's nine appellate issues and reformed the judgments to illustrate that appellant pled "not true" to the enhancement allegations in the indictment, we affirm the judgments as reformed.

Brian Quinn
Chief Justice

Do not publish.