**Opinion filed August 21, 2025**



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00099-CR

_____

### JOSUE MORALES, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 106th District Court**
**Dawson County, Texas**
**Trial Court Cause No. 22-8927**

## M E M O R A N D U M   O P I N I O N

Appellant, Josue Morales, was indicted for the offense of continuous violence against the family, a third-degree felony. TEX. PENAL CODE ANN. § 25.11(a), (e) (West Supp. 2024). The jury convicted Appellant of the charged offense, and the trial court assessed his punishment at ten years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice.

In his sole issue on appeal, Appellant challenges the sufficiency of the evidence to support his conviction. We affirm.

## I. *Factual Background*

The indictment charged Appellant with continuous family violence by: (1) intentionally, knowingly, and recklessly causing bodily injury to Eva Casarez, a member of Appellant's family or household or a person with whom he had or has a dating relationship, on or about October 22, 2021, by striking her with his hand and causing Casarez's head to strike a hard object; and (2) intentionally, knowingly, and recklessly causing bodily injury to Casarez, on or about February 3, 2022, by striking her with his hand. The evidence presented at trial concerning these alleged incidents of family violence is outlined below.

### A. *The October 22, 2021 Incident*

Casarez testified that she previously had been in a relationship with Appellant; one child was born during their relationship. When this incident occurred, she and Appellant were living together in a "camper." On this date, Casarez stated that she and Appellant were arguing when Appellant grabbed her cell phone and ran to his vehicle.

Casarez, while carrying their infant child, followed Appellant to his vehicle, opened the front passenger door, and sat in the front passenger seat. Casarez testified that she repeatedly asked Appellant to return her cell phone, but he refused. Casarez reached across the vehicle to retrieve her cell phone from Appellant as he repeatedly "teased" her by moving it "back and forth." According to Casarez, as she reached for her cell phone, her hand "brushed" against Appellant. In response to this physical contact, Appellant "backhanded" Casarez "several times" in the face. As a result, Casarez suffered a "busted" lip and bruising on the right side of her face.

After striking Casarez, Appellant drove away with Casarez, and their infant child seated unsecured in the passenger seat. Casarez stated that she did not want to "ride around" with Appellant, and she asked Appellant to take her home. Appellant eventually returned to the camper, and, upon his arrival, he "slammed" on the vehicle's brakes, put his hand on the back of Casarez's head, and pushed her head into the dashboard. Casarez testified that, at some point after they had returned to the camper, Appellant "threw" her cell phone at her; Casarez then used her cell phone to call 9-1-1.

As to the circumstances of the October 2021 incident, Appellant testified that he did not take Casarez's cell phone; rather, Appellant stated that Casarez chased and followed him to his vehicle, while carrying their child, because he had used his cell phone to record her behavior that day.[1] Appellant testified that he initially told Casarez that she needed to exit his vehicle because he needed to go to work, but, after she refused to leave, Appellant told her that she could "drop [him] off [and] bring the car back." Appellant stated that, at some point, Casarez hit him. He then "grabbed" her hands so that she could not hit him again. After Casarez hit Appellant a second time, he "push[ed]" on the vehicle's brakes, which caused Casarez's face to strike the dashboard. However, Appellant stated that he did not intend to or purposefully apply the brakes so that Casarez's face would hit the dashboard.

Officer Vernon Spence of the Lamesa Police Department testified that he investigated this incident and interviewed Casarez. Officer Spence recounted the statements that Casarez made to him during the interview, which was consistent with her trial testimony. Officer Spence observed injuries on the right side of Casarez's face—photographs of these injuries were published to the jury—and he testified that he believed these injuries were consistent with her version of the October 2021

---

[1]According to Appellant, he was unable to produce this video recording at trial because he did not have access to his cell phone due to a broken screen.

incident. Based on his investigation, Officer Spence testified that the lead officer filed a misdemeanor assault family violence case against Appellant with the Dawson County Attorney. Following this incident, Casarez moved and ceased living with Appellant.

B. *The February 3, 2022 Incident*

Casarez testified that on February 3, 2022, Appellant appeared at her mother's home and knocked on the front door. Casarez "figured [Appellant] wanted to see his [child]," and she asked Appellant to meet her outside because her mother "[did] not want him . . . at her home." Casarez went outside and she sat inside Appellant's vehicle with their child. At some point, Appellant "drove off"; at the time, Casarez was seated in the passenger seat, holding their child who, again, was not properly restrained. Casarez requested that Appellant return to her mother's house several times, but he refused and instead drove to his brother's residence.

Upon arriving there, Appellant told Casarez that he intended to "keep" their child and that he "wanted to take [the child] inside his brother's house." Appellant then took their child from Casarez and exited his vehicle. Casarez also exited the vehicle and "pushed on" Appellant to prevent him from taking their child. At some point, Appellant's brother heard the commotion and came outside. Appellant handed the child to his brother and became upset with Casarez for "disrespecting him"; he also called her "all kinds of names." Appellant then attacked Casarez and attempted to bite her face. Casarez testified that Appellant picked her up off the ground and squeezed her body for a "long duration of time," which caused her to urinate on herself. Appellant's brother eventually separated Appellant and Casarez. Casarez stated that after she retrieved her child, and while holding him in her arms, Appellant "backhanded" her in the face. Photographs of Casarez's injuries depicted visible bruising around one of her eyes.

4

Appellant testified to a different version of events regarding the February 2022 incident. Appellant stated that he drove to Casarez's mother's house that day to "pick [Casarez] up." According to Appellant, Casarez had agreed to watch a movie at "[his] house." Appellant then drove Casarez to his brother's house and, once they arrived, Casarez exited the vehicle and maneuvered to the back seat where she then began hitting Appellant. Appellant stated that he "honk[ed]" the horn to his vehicle for "a good minute" while Casarez punched him, slapped him, and pulled his "collar." At some point, Appellant's brother came outside, and Appellant handed him the child. Appellant then "wrapped" his hands around Casarez to "restrain" her and prevent her from hitting him.

Appellant's brother, Ricardo Morales, testified that he went outside after he heard "honking," and that he saw Casarez "scrambling around" in the backseat of Appellant's vehicle. During his recorded interview with law enforcement, Ricardo stated that he saw Appellant grab Casarez in a "bearhug" after Appellant handed him the child. Ricardo also saw Appellant "smack" Casarez in the face. Ricardo stated that, after the incident, he observed red marks on Appellant's face, "like [Casarez] had been smacking him," but he never saw Casarez hit Appellant.

Sergeant Mason Tidwell of the Lamesa Police Department testified that he was dispatched to investigate the February 2022 incident between Appellant and Casarez and that he interviewed Casarez. Sergeant Tidwell stated that Casarez appeared visibly upset during the interview, and that he observed bruising around one of her eyes. Sergeant Tidwell testified that Appellant was indicted for the February 2022 incident. Casarez also obtained a protective order against Appellant following this incident.

## II. *Standard of Review*

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Garcia v. State*, 667 S.W.3d 756, 761 (Tex. Crim. App. 2023); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

When conducting a sufficiency review, we consider all the evidence admitted at trial, including evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Brooks*, 323 S.W.3d at 899; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Lee v. State*, 676 S.W.3d 912, 915 (Tex. Crim. App. 2023, no pet.). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *See* TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007); *Garcia*, 667 S.W.3d at 762 ("[A] reviewing court does not sit as the thirteenth juror and may not substitute its judgment for that of the factfinder by reevaluating the weight and credibility of the evidence."); *Brooks*, 323 S.W.3d at 899; *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). This standard is deferential and accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Garcia*, 667 S.W.3d at 761; *Clayton*, 235 S.W.3d at 778. Thus, if the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination.

*Jackson*, 443 U.S. at 326; *Garcia*, 667 S.W.3d at 762; *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012); *Clayton*, 235 S.W.3d at 778.

We treat direct and circumstantial evidence equally under this standard. *Isassi*, 330 S.W.3d at 638; *Ruiz v. State*, 631 S.W.3d 841, 851 (Tex. App.—Eastland 2021, pet. ref'd). The evidence need not directly prove the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing the defendant's guilt, and circumstantial evidence, alone, can be sufficient to establish guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). Each fact need not point directly and independently to the defendant's guilt if the cumulative force of all incriminating circumstances is sufficient to support the defendant's conviction. *Hooper*, 214 S.W.3d at 13. Therefore, in evaluating the sufficiency of the evidence, we treat direct and circumstantial evidence equally, and we must consider the cumulative force of all the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017); *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015); *Isassi*, 330 S.W.3d at 638; *Hooper*, 214 S.W.3d at 13.

Finally, we measure the sufficiency of the evidence by the elements of the charged offense as defined by the hypothetically correct charge for the case. *Morgan v. State*, 501 S.W.3d 84, 89 (Tex. Crim. App. 2016); *see also Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). In this regard, to determine whether the State has met its burden to prove a defendant's guilt beyond a reasonable doubt under the *Jackson* standard, we compare the elements of the offense to the evidence adduced at trial. *Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014) (citing *Malik*, 953 S.W.2d at 240). The hypothetically correct charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and

adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240.

### III. *Analysis*

In his sole issue, Appellant challenges the sufficiency of the evidence to support his conviction for continuous violence against the family. Specifically, Appellant contends that there is no evidence to show that (1) he assaulted Casarez, or (2) he intentionally, knowingly, or recklessly caused any bodily injury to her.

As relevant to this appeal, a person commits the offense of continuous violence against the family if, during a period that is twelve months or less in duration, the person commits two or more assaults that cause bodily injury to a person with whom he has or had a dating relationship. *See* PENAL §§ 22.01(a)(1), 25.11(a); TEX. FAM. CODE ANN. § 71.0021(b) (West 2019) (defining "dating relationship"); *see also Arevalo v. State*, 675 S.W.3d 833, 844 (Tex. App.—Eastland 2023, no pet.). For purposes of our analysis, there is no dispute that Appellant and Casarez were either in a dating relationship at the time the alleged assaultive conduct occurred or that the two alleged incidents outlined above occurred within a twelve-month period as required by the statute.

"Bodily injury" as defined in the Penal Code includes "physical pain." PENAL § 1.07(a)(8). "Any physical pain, however minor, will suffice to establish bodily injury." *Garcia v. State*, 367 S.W.3d 683, 688 (Tex. Crim. App. 2012); *see also Laster v. State*, 275 S.W.3d 512, 524 (Tex. Crim. App. 2009); *Hernandez v. State*, 531 S.W.3d 359, 363 (Tex. App.—Eastland 2017, no pet.). Further, bodily injury encompasses "even relatively minor physical contacts so long as they constitute more than mere offensive touching." *Clark v. State*, 461 S.W.3d 244, 248 (Tex. App.—Eastland 2015, pet. ref'd) (quoting *Lane v. State*, 763 S.W.2d 785, 786 (Tex. Crim. App. 1989)). In addition to direct evidence that a victim experienced pain, a

factfinder may infer that a victim felt or experienced physical pain because people of common intelligence understand the effects of pain and some of its natural causes. *See Garcia*, 367 S.W.3d at 688 (citing *Randolph v. State*, 152 S.W.3d 764, 774 (Tex. App.—Dallas 2004, no pet.)); *Clark*, 461 S.W.3d at 248.

For purposes of this charged offense, a person acts intentionally "when it is his conscious objective or desire to engage in the conduct or cause the result." PENAL § 6.03(a) (West 2021). A person acts knowingly "when he is aware that his conduct is reasonably certain to cause the result." *Id.* § 6.03(b). A person acts recklessly "when he is aware of but consciously disregards a substantial and unjustifiable risk that the . . . result will occur." *Id.* § 6.03(c). Recklessness requires that the defendant foresee the risk involved and in turn consciously ignore it. *Williams v. State*, 235 S.W.3d 742, 751 (Tex. Crim. App. 2007).

"Intent and knowledge are fact questions for the jury and are almost always proven through evidence of the circumstances surrounding the crime." *Manrique v. State*, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999) (Meyers, J., concurring); *Luna v. State*, 687 S.W.3d 79, 93 (Tex. App.—Eastland 2024, pet. ref'd). A jury may infer intent and knowledge from any facts that tend to prove its existence, "including the acts, words, and conduct of the accused," and "the nature of wounds inflicted on the victims." *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002) (quoting *Manrique*, 994 S.W.2d at 649); *Luna*, 687 S.W.3d at 93.

Here, the jury could have reasonably inferred and found from the evidence that Casarez suffered physical discomfort and pain because of Appellant's assaultive conduct. *See Garcia,* 367 S.W.3d at 688; *Laster*, 275 S.W.3d at 524; *Bolton v. State*, 619 S.W.2d 166, 167 (Tex. Crim. App. 1981) (testimony that relates to the extent of the victim's injuries is sufficient to show bodily injury without direct testimony of physical pain); *Settlemyre v. State*, 489 S.W.3d 607, 608–09 (Tex. App.—Eastland

2016, pet. ref'd) (scratch marks on an assault family violence victim's wrists constituted bodily injury). Casarez testified that Appellant struck her multiple times with his hand during the October 2021 incident and that he slammed her head into the dashboard of his vehicle. As a result, she sustained a "busted lip" and bruising on her face. Casarez demonstrated to the jury how Appellant grabbed her head and caused it to strike the dashboard of his vehicle. Casarez further testified that Appellant struck her face during the February 2022 incident. Her testimony and version of events was corroborated by Officer Spence and Sergeant Tidwell, who each observed injuries on Casarez's face following these incidents. Finally, during Ricardo's recorded interview he stated that he saw Appellant "smack [Casarez] in the face" during the February 2022 incident.

Seven photographs that depicted Casarez's injuries were admitted and published to the jury. These images were taken shortly after the assaults occurred and clearly depict visible bruising and red marks on Casarez's face, injuries that Casarez claimed were caused by Appellant striking her. Photographs of injuries that a victim sustained during an assault, without testimony of any physical pain endured by the victim, are alone sufficient to show bodily injury. *Aguilar v. State*, 263 S.W.3d 430, 434 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd). Consequently, we conclude that Casarez's testimony, along with the photographs of her injuries, are sufficient to show, and the jury could have reasonably inferred, that she experienced bodily injury because of Appellant's assaultive conduct. *See Bin Fang v. State*, 544 S.W.3d 923, 928 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (holding that evidence of a cut or bruise is sufficient to establish bodily injury).

Appellant argues that his testimony established that Casarez was the aggressor, and that his actions were designed to "restrain" Casarez and "did not cause [her] bodily injury." As such, Appellant contends that there was no evidence

presented to show that he intentionally, knowingly, or recklessly caused any bodily injury to her. However, in this case, as in all cases, the jury may believe all, some, or none of any witness's testimony. *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992); *Reyes v. State*, 465 S.W.3d 801, 805 (Tex. App.—Eastland 2015, pet. ref'd) (citing *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986)); *see Winfrey*, 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899. As the trier of fact, it is the jury's duty, as the sole judge of the witnesses' credibility, to weigh and resolve any conflicts in the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319; *Garcia*, 667 S.W.3d at 761–62; *Winfrey*, 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899.

In this case, the jury could have reasonably inferred from the evidence presented that Appellant, by his conduct, intentionally, knowingly, or recklessly caused bodily injury to Casarez. *See Laster*, 275 S.W.3d at 524 ("One's acts are generally reliable circumstantial evidence of one's intent." (quoting *Rodriguez v. State*, 646 S.W.2d 524, 527 (Tex. App.—Houston [1st Dist.] 1982, no pet.))). Moreover, the jury was also able to employ common sense in its consideration of the evidence to determine whether Casarez suffered bodily injury because of Appellant's assaultive conduct. *See* PENAL § 1.07(a)(8); *Aguilar*, 263 S.W.3d at 434 (citing *Wawrykow v. State*, 866 S.W.2d 96, 99–100 (Tex. App.—Beaumont 1993, no pet.)). Generally, the testimony of a single eyewitness, here Casarez, can be sufficient to support a conviction. *See Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971). The jury's apparent decision to credit and believe Casarez's accounts of the assaults committed upon her by Appellant was inherently a credibility determination to which we defer under the *Jackson* standard of review.

We have reviewed the cumulative force of all the evidence in the light most favorable to the jury's verdict, as we must, and we conclude that the record before

11

us contains sufficient evidence from which a rational jury could have logically inferred and found beyond a reasonable doubt that Appellant committed the offense of continuous violence against the family as charged in the indictment. Accordingly, we overrule Appellant's sole issue on appeal.

## IV. *This Court's Ruling*

We affirm the judgment of the trial court.


W. STACY TROTTER
JUSTICE


August 21, 2025

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.